CASE NO. 25-20433

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**JOHN DIMECH,**

*Plaintiff-Appellant*

v.

**SHELL TRADING (US) CO.,**

*Defendant-Appellee*

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division
Cause No. 4:25-CV-00252,

## BRIEF OF APPELLANT

David J. Quan
Texas Bar No. 16422300
dquan@davidquanlaw.com
LAW OFFICE OF DAVID J. QUAN
4545 Bissonnet St., Suite 298
Bellaire, Texas 77401
Telephone: (713) 225-5300
Facsimile: (713) 583-9795

**ATTORNEY FOR APPELLANT**

CASE NO. 25-20433

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

JOHN DIMECH,

*Plaintiff-Appellant*

v.

SHELL TRADING (US) CO.,

*Defendant-Appellee*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

### A.  Plaintiff/Appellant

John Dimech

*Counsel for Plaintiff/Appellant*

David J. Quan
Texas Bar No. 16422300
*dquan@davidquanlaw.com*
LAW OFFICE OF DAVID J. QUAN
4545 Bissonnet St., Suite 298

i

Bellaire, Texas 77401
Telephone: (713) 225-5300
Facsimile: (713) 583-9795

**B.     Defendant/Appellee**

Shell Trading (US) Co.

***Counsel for Defendant/Appellee***

Shauna Johnson Clark
State Bar No. 00790977
*shauna.clark@nortonrosefulbright.com*
Heather Sherrod
State Bar No. 24083836
*heather.sherrod@nortonrosefulbright.com*
Warren Huang
State Bar No.
*warren.huang@nortonrosefulbright.com*
NORTON, ROSE, FULBRIGHT U.S. LLP
1550 Lamar St., Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

*/s/ David J. Quan*
David J. Quan
Attorney-of-Record for Appellant
John Dimech

**STATEMENT REGARDING ORAL ARGUMENT**

Plaintiff-Appellant John Dimech requests oral argument in this case as he believes it could significantly aid the decisional process in this case.

## TABLE OF CONTENTS

Certificate of Interested Persons..................................................i

Statement Regarding Oral Argument......................................iii

Table of Contents..............................................................iv

Table of Authorities..........................................................vi

Jurisdictional Statement........................................................1

Statement of Issues Presented................................................2

Statement of the Case..........................................................3

Statement of Facts..............................................................7

Summary of Argument........................................................12

Argument........................................................................13

    I.      Standard of Review................................................13

    II.    The District Court's Order Improperly Relies on
        Arguments and Evidence Raised for the First Time
        in STUSCO's Reply................................................13

    III.   The District Court Failed to Fully Consider the Entire
        Document that Contains the Forum Selection Clause
        When Determining if It Applied to Appellant's Claims........18

    IV.   The District Court Did Not Conduct a Correct Analysis
        to Determine the Applicable Law for Interpreting the
        Forum Selection Clause..........................................24

V.    The District Court's Multiple Factual Errors
      Demonstrate An Unreliability of a Correct Reading of
      the Record that Makes Its Analysis Suspect.........................25

Conclusion...............................................................................27

Certificate of Compliance.........................................................29

Certificate of Service..............................................................29

## TABLE OF AUTHORITIES

**Cases**

*Bexar County Hospital District v. Factory Mutual Insurance Co.,*
474 F.3d 274 (5th Cir. 2007) ............................................................ 23

*Doe v. Facebook, Inc.,*
No. CV-H-22-0226, 2023 WL 3483891 (S.D. Tex. May 16, 2023) ................... 24

*Fintech Fund v. Horne,*
327 F. Supp. 3d. 1007  (S.D. Tex 2021) ...................................... 20, 23

*Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.,*
99 F.4th 770 (5th Cir. 2024) ........................................................... 14

*Gillaspy v. Dallas Independent School Dist.,* 278 Fed. Appx. 307
(5th Cir. 2008) ............................................................................. 13

*Gonzalez v. Mission American Insurance Co.,*
795 S.W.2d 734 (Tex. 1990) ........................................................... 23

*In re Deepwater Horizon,*
824 F.3d 571 (5th Cir. 2016) ........................................................... 14

*Jones v. Cain,*
600 F.3d 527 (5th Cir. 2010) ...................................................... 14, 15

*Lizalde v. Vista Quality Markets,*
746 F.3d 222 (5th Cir. 2014) ........................................................... 20

*MCI Telecommunications Corp. v. Texas Utilities Electric Co.,*
995 S.W.2d 647 (Tex. 1999) ...................................................... 20, 22

*O'Shaughnessy v. Young Living Essential Oils,* L.C.,
810 Fed. App'x 308, 312 (5th Cir. 2020) ......................................... 20

*Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.,*
297 F.3d 388 (5th Cir. 2002 ........................................................... 18

*Rainier DSC 1, L.L.C. v. Rainier Capital Management, L. P.,*
828 F.3d 356 (5th Cir. 2016) ........................................................... 13

*Richland Plantation Co. v. Justiss–Mears Oil Co., Inc.,*
671 F.2d 154, 156 (5th Cir.1982) ..................................................... 18

vi

*Robinson v. Brahma Group, Inc.,*
    No. 4:23-CV-4290, 2024 WL 1962891 (S.D. Tex. May 3, 2024) ...................... 24

*Simmons v. T-Mobile USA,*
    No. H-06-1820, 2006 WL 3447684 (S.D. Tex. Nov. 22, 2006) .......................... 14

*Springs Indus., Inc. v. Am. Motorists Ins.,*
    137 F.R.D. 238 (N.D. Tex. 1991) ................................................................. 16

*Weber v. PACT XP Technologies, AG,*
    811 F.3d 758 (5th Cir. 2016) ................................................................. 13, 25

*Wellogix, Inc. v. SAP Am., Inc.,*
    58 F. Supp. 3d 766 (S.D. Tex. 2014) ....................................................... 24, 25

**Statutes**

28 U.S.C. §1291 ......................................................................................... 1

28 U.S.C. §1446(d) ..................................................................................... 1

## JURISDICTIONAL STATEMENT

The district court had jurisdiction to adjudicate this action under 28 U.S.C. §1446(d).

This Court has jurisdiction under 28 U.S.C. §1291. On August 268, 2025, the district court entered an order stating its opinion that the magistrate judge's Memorandum and Recommendation that Defendant' Motion to Dismiss be granted and that this case be dismissed without prejudice to refiling in an English Court.[1] Accordingly, the district court ordered that it was thereby adopting the Memorandum and Recommendation and further that this case was dismissed without prejudice to filing in the appropriate forum.[2]

On that same day, the district court signed a Final Judgment in accordance with the Order adopting the magistrate judge's Memorandum and Recommendation.[3] Dimech filed a timely notice of appeal.[4]

---

[1] ROA.202.
[2] Id.
[3] ROA.203.
[4] ROA.206-208.

## STATEMENT OF ISSUES PRESENTED

1.      Whether the District Court's ruling is fatally defective because of its reliance on arguments and evidence that Appellee raised for the first time in its reply brief.

2.      Whether the District Court properly and fully considered the entire "agreement" in which the relied upon forum-selection clause is a provision.

3.      Whether the District Court conducted an improper analysis to determine what law applied for interpreting the forum selection clause at issue.

4.      Whether the factual errors contained in the M&R demonstrate that the recommendation adopted by District Court was based on an inaccurate understanding of the record in this matter.

## STATEMENT OF THE CASE

On January 17, 2025, Dimech filed his Original Petition, styled *John Dimech v. Shell Trading (US) Co.*, Cause No. 2025-03854, in the 269th Judicial District of Harris County, Texas. In his pleading, Dimech asserted claims for Breach of Contract, Fraud, and Fraudulent Inducement, all of which are state law claims; there were no claims made pursuant to a federal law.[5] Dimech's asserted claims arose solely from Shell Trading (US) Co. ("STUSCO")'s calculation of his Commercial Bonus Program compensation ("Commercial Bonus Compensation") for the 2020 performance year. The Commercial Bonus Program is a U.S.-based compensation program administered locally, with payments made in cash in February 2021. Plaintiff initiated this matter in Harris County, Texas because Defendant Shell Trading (US) Co.'s headquarters are in Houston.[6]

Though STUSCO is a forum state defendant, it removed this case to federal court on January 21, 2025, prior to being served via a "snap removal."[7]

---

[5] See ROA.16-26.
[6] ROA.7, 16-17.
[7] ROA.5-37.

3

Within three weeks of removal, on February 11, 2025, Defendant filed a Motion to Dismiss for *Forum Non Conveniens*.[8]

On February 26, 2205, Senior United States District Judge Sim Lake entered an Order referring this matter to Magistrate Judge Christina A. Bryan.[9]

Dimech filed his Response in Opposition to Defendant's Motion to Dismiss for *Forum Non Conveniens*, on March 5, 2025, pointing out, among other things, that his claims were made regarding the calculation of his Commercial Bonus Compensation and that STUSCO's sole basis for seeking to have this mattered dismissed for *forum non conveniens* were provisions STUSCO cited from internal rules covering a definite component of compensation called the Conditional Bonus Plan In addition to being separately administered and calculated, Conditional Bonuses made up a smaller portion of eligible employees' total compensation.[10] Dimech's pleadings made no mention of the Conditional Bonus Plan, as he was not challenging the calculation of that portion of his 2020 compensation.[11]

---

[8] ROA.45-93

[9] ROA.94-95.

[10] ROA.96-109.

[11] *Id.*

4

In its Reply, which was filed on March 11, 2025, STUSCO filed new facts and evidence to contend that the company's asserted rules that govern the Conditional Bonus Plan and the Commercial Bonus Program were interrelated.[12] To that end, STUSCO provided new facts and a second declaration from STUSCO's Vice President of Human Resources to provide additional assertions of facts that had not been the basis of STUSCO's Motion.[13]

As noted in the Joint Discovery/Case Management Plan filed on February 25, 2025, Defendant declined to participate in pre-trial discovery of any sorts due to its Motion to Dismiss.[14]

Magistrate Judge Christina Bryan issued her Memorandum and Recommendation on July 14, 2025.[15]

Dimech timely filed his Objections to the Magistrate Judge's Memorandum and Recommendation on August 5, 2025.[16]

STUSCO filed its Response in Opposition to Dimech's Objections on

---

[12] ROA.116-128.
[13] ROA.126-127.
[14] ROA.86-93.
[15] ROA.129-136.
[16] ROA.144-177. Per the Court's August 7, 2025 Order granting the Joint Motion to Modify the Deadlines for the Objections to the July 14, 2025 Memorandum and Recommendation and Response to Such Objections to be Timely Filed, the deadline for Dimech's Objections was August 5, 2025. ROA.184-185.

August 15, 2025.[17]

On August 28, 2025, Senior United States District Court Judge Sim Lake entered an order adopting the Magistrate Judge's Memorandum and Recommendation without offering any analysis for the Court's decision.[18]

On that same day, the Court entered Final Judgment and dismissed this matter without prejudice to filing in the appropriate forum.[19]

On September 25, 2025, Dimech timely filed his Notice of Appeal.[20]

---

[17] ROA.186-201.
[18] ROA.202.
[19] ROA.203.
[20] ROA.204-205.

STATEMENT OF FACTS

## A.    Context of the Dispute

From 2010 through 2021, Appellant John Dimech ("Appellant" and "Dimech") worked in the United States as a U.S. person for Appellee Shell Trading (US) Co. ("Appellee" and "STUSCO"),    a United States company.[21] STUSCO was operating within the jurisdiction of the United States and in accordance with Dimech's local employment contract, which was governed by U.S. employment law and within Appellee's U.S. commercial trading employee-management framework.[22] STUSCO's headquarters were in Houston, Texas. [23]

In 2020, Appellant served as Appellee's President and General Manager of North America Crude Oil Trading.[24]

## B.    The Commercial Bonus Program

The commodity trading industry is a highly competitive field. Accordingly, as a company that seeks to remain a top-tier employer in the industry, STUSCO seeks to attract and retain the best talent. The

---

[21] ROA.16-17.
[22] *Id.*
[23] *Id.*
[24] *Id.*

7

Company's total compensation structure for the commercial traders serves an important role in helping STUSCO reach those objectives.[25]

A key component of STUSCO's compensation structure for its commercial traders is the Commercial Bonus Program. This compensation component has been established to acknowledge and reward strong performance and compliance within the group, providing employees with compensation incentives for achieving high performance evaluation grades and contributing to strong revenue. This component can and often does exceed the commercial trader's base salary. [26]

As a commercial trader, Appellant participated in the Commercial Bonus Program.[27]

The timeline for determining this component of compensation provides insight on how it is the primary compensation component beyond salary:

- **<u>December, Year 0</u>** -- at the conclusion of each calendar year there is an employee performance appraisal process which occurs in December. All employees are evaluated and ranked in this process

---

[25] ROA.151-153.
[26] *Id.*
[27] ROA.18.

by their immediate supervisor(s). As a senior executive, Dimech was responsible for ranking many employees in his capacity. He likewise was ranked in this process as an employee.

- **January, Year 1** – throughout the month, the bonus amount pursuant to the Commercial Bonus Program is calculated for all commercial trading personnel, based on their performance, as part of their employment arrangement under local U.S. jurisdiction. These bonuses are not arbitrary but are instead correlated with performance using a centralized calculation model and a standard process.

- **End of January, Year 1** – all commercial trading employees are advised of their Year 0 Commercial Bonus Program award.

- **Mid-February, Year 1** -- employees are paid the first $100,000.00 of their bonus and 60% of the remainder of their Commercial Bonus, beyond the first $100,000.00. These payments are immediately available to the employee.

- **April, Year 1** – selected employees who received bonuses under the Commercial Bonus Program may elect whether to participate in the Conditional Bonus Plan with the amount remaining from the

Commercial Bonus Program. Unlike the Commercial Bonus Program that is administered on a regional basis, the Conditional Bonus Plan is a global trading program that can be likened to the employee receiving equity in Shell's **global** trading business (as opposed to the broader Shell Group or the regional trading company of which they are an employee). It is a deferred compensation that can diminish to be worth nothing, double in value, or be forfeited or subject to clawback depending – or *conditioned* – upon certain factors, such as whether the individual remains employed by STUSCO, whether his or her separation is voluntary, whether the trader's interest or partial interest vests, and how Shell's global trading business performs during the subsequent three (3) year period. Given the conditional nature of this portion of compensation, the employee must accept the rules of that global program to receive it. If an employee declines participating in the Conditional Bonus Plan, they do not partake in that program but would still have been advised of their total Commercial Bonus Program bonus and have received more than 60% of that amount.

- **Anniversary Date of Participation in Years 2, 3, and 4 (approximately)** – those who have agreed to participate in the Conditional Bonus Plan are advised of the increase or decrease in the amount of their funds in the Plan which is primarily affected by the performance of Shell Trading globally.

- **Anniversary Date, Year 4 (approximately)** – participants' funds in the Conditional Bonus Plan vest.

- **September following Third Anniversary Date (i.e., Year 4)** -- the Conditional Bonus Plan funds are distributed.[28]

## C.    Plaintiff's Lawsuit

On January 17, 2025, Appellant filed his lawsuit in state district court claims against STUSCO disputing calculation of the calculation of his compensation under the Commercial Bonus Program for his performance in 2020.

---

[28] ROA.151-153.

11

## SUMMARY OF ARGUMENT

The judgment must be reversed for four independent reasons.

First, the District Court fully adopted an M&R that was improperly based on arguments and evidence that STUSCO did not assert as part of its motion to dismiss but only raised for the first time in its reply brief. Thus, the District Court's ruling must be reversed.

Second, by failing to consider the entire document that contained the relied-upon forum selection clause, the District Court's interpretation of the forum selection clause was deficient and resulted in an improper conclusion that must be reversed.

Third, the District Court did not properly analyze what law was to apply in interpreting the forum selection clause.

Finally, the multiple factual errors contained in the analysis of the District Court regarding key issues in this matter demonstrate a misunderstanding or misapplication of a correct reading of the record.

## ARGUMENT

## I.    Standard of Review

A review of the district court's interpretation of a forum-selection clause and its enforceability is subject to *de novo* review.[29]

## II.    The District Court's Order[30] Improperly Relies on Arguments and Evidence Raised for the First Time in STUSCO's Reply.

The Fifth Circuit has long condemned "sandbagging"—the practice of raising new arguments or evidence in a reply brief, as such practice deprives the opposing party of a fair opportunity to respond. "**It is the practice of this court and the district courts to refuse to consider arguments raised for the first time in reply briefs.**"[31]   As the District Court relied heavily on new material introduced only in STUSCO's Reply as the basis for its order granting Appellee's Motion to Dismiss, the District Court's Final Judgment was made in error and should be reversed.

---

[29] *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016).

[30] As Senior District Court Judge Lake adopted the Magistrate Judge Cristina Bryan's Memorandum and Recommendation without comment, this brief will consider the analysis and conclusions of Memorandum and Recommendation (sometimes referred to as "M&R") as the District Court's.

[31] *Gillaspy v. Dallas Independent School Dist.*, 278 Fed. Appx. 307, 315 (5th Cir. 2008) (emphasis added); see also *Rainier DSC 1, L.L.C. v. Rainier Capital Management, L. P.*, 828 F.3d 356, 360-61 (5th Cir. 2016) (argument raised for first time in reply brief is "not properly before the court.").

13

A court's consideration of new arguments and evidence first submitted in a movant's reply brief violates settled case law. "Arguments 'raised for the first time in a reply brief are generally waived,' as the responding party is deprived of the opportunity to respond to the new argument."[32]  Likewise, a court can decline to consider new evidence in a reply brief.[33]

Here, after STUSCO moved to dismiss for forum non conveniens based on the erroneous assertion that Appellant was asserting claims based on his Award under the Conditional Bonus Plan, Dimech responded by clarifying that his causes of action were solely based on the calculation of his compensation that was to be paid pursuant to the *Commercial* Bonus Program, ***not*** the Conditional Bonus Plan.[34]  In fact, his pleadings made no reference to the Conditional Bonus Plan at all; the Commercial Bonus Program was the only contract that Appellant identified had been breached in his pleadings. [35]

---

[32] *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010); *In re Deepwater Horizon*, 824 F.3d 571, 585 n.8 (5th Cir. 2016) (holding an argument raised only in reply "is not properly before the court").

[33] *Simmons v. T-Mobile USA*, No. H-06-1820, 2006 WL 3447684, at *1 (S.D. Tex. Nov. 22, 2006); *see Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 774 (5th Cir. 2024).

[34] ROA.100-102

[35] *Id.*

14

Faced with Appellant's clarification that Appellee had apparently misread the pleadings and had based its entire Motion on the wrong component of Dimech's compensation, Appellee was forced to assert a new argument in its reply to contend that the Rules of the Conditional Bonus Plan extended to encompass the Commercial Bonus Program.[36] The fact that this is a new argument for seeking the dismissal of Appellant's claims is as much as admitted by Appellee titling the second section of its Reply Brief as "*Supplemental* Factual Background."[37] Given that it was a new basis for the relief it was seeking and had the burden to prove, this argument was not properly raised in Appellee's reply brief.[38]

Furthermore, STUSCO compounded the impropriety of its reply by concurrently filing new evidence, in the form of a self-serving declaration by Erin Verdon, Appellee's Vice President of Human Resources, to

---

[36] See ROA.113-120.

[37] See ROA.117 (emphasis added). Although Defendant attempts to justify that the arguments in its reply and the evidence submitted with are not new, it does so only in with conclusory assertions. STUSCO provides no explanation as to how these materials are not new. Moreover, Defendant relies upon non-binding authority from a district court that is outside of the Fifth Circuit to attempt to buttress its unsupported contention.

[38] See *Cain*, 600 F.3d 527 at 541.

support its newly introduced argument.[39] "[A] reply brief that presents dispositive evidence by way of *new affidavits and exhibits* deprives the nonmovant of a meaningful opportunity to respond."[40]

Verdon had already provided a declaration that Defendant had used to support its Motion.[41] Ms. Verdon's second declaration was highly determinative of the ultimate issues in Defendant's motion as it offered her description of (1) the purported scope of the Conditional Bonus Plan and its alleged relation to Plaintiff's Commercial Bonus Program compensation, and (2) how these two different components of Dimech's compensation were supposedly interrelated.[42]

Despite this Court's strong admonitions against consideration of arguments and evidence raised for the first time in a reply and that self-serving declarations should be disregarded, the District Court not only relied on this improper material, but it also accepted STUSCO's new

---

[39] See ROA.125-127.

[40] *Springs Indus., Inc. v. Am. Motorists Ins.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) (emphasis added).

[41] ROA.61-63.

[42] ROA.125.127. Verdon's second declaration proffers new evidence regarding the public and private interest factor analysis. Without any opportunity to be challenged, Appellee, through Verdon's second declaration, introduced new evidence about the alleged relationship Appellant with the potential witnesses Dimech had identified in his Response.

evidence whole cloth: the M&R's conclusion that the Commercial Bonus Program and Conditional Bonus Plan are "inextricably intertwined"[43] mirrors Appellee's description of them being "wholly intertwined."[44]

Furthermore, Defendant's Reply and the concurrently filed second Verdon declaration are cited multiple times in the M&R's analysis to draw a connection between the Conditional Bonus Plan and the Commercial Bonus Program without question.[45]  For example, the District Court's analysis accepts details of Verdon's description of Dimech's compensation and how they are interrelated though Appellee provided no basis for Verdon having first-hand knowledge of such details.[46]

As Appellant was not provided with the opportunity to rebut the new argument and evidence asserted for the first time in and with Appellee's reply, the District Court should not have even considered the arguments in Appellee's reply brief and the concurrently filed second declaration by Verdon, much less become the full basis for the District Court's analysis.

---

[43] ROA.134.
[44] ROA.117.
[45] See ROA.130 and ROA.133.
[46] See ROA.130 and ROA.133.

17

Without the arguments and evidence that Appellee raised for the first time in its Reply Brief, the only basis that STUSCO offered for dismissal was its erroneous contention that Appellant's claims were based on the Rules of the Conditional Bonus Plan – a Plan that was not ever referenced in Appellant's pleadings.

The District Court's order rests solely on arguments and evidence that Appellee first offered in its reply and, thus, should not have been considered. Accordingly, this Court should reverse the District Court's order dismissing Appellant's claims and remand this matter so that Appellant can continue to prosecute his claims in the United States District Court for the Southern District of Texas.

III. **The District Court Failed to Fully Consider the Entire Document that Contains the Forum Selection Clause When Determining if It Applied to Appellant's Claims.**

The District Court failed to follow this Court's holdings that courts must interpret a forum selection clause – not in isolation – but in the context of the ***entire*** contractual arrangement of which it is a part.[47]

---

[47] *See Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, <u>297 F.3d 388, 395-96</u> (5th Cir. 2002) (citing *Richland Plantation Co. v. Justiss–Mears Oil Co., Inc.*, <u>671 F.2d 154, 156</u> (5th Cir.1982) ("When several documents represent one agreement, all must be construed together in an attempt to discern the intent of the parties, reconciling apparently conflicting provisions and attempting to give effect to all of them, if possible.")).

Because the District Court failed to follow this Court's guidance regarding this standard, it did not consider language in the Rules document in which the forum selection clause was found that plainly limit the Rules coverage, including the forum selection clause. Thus, the District Court's ruling should be reversed as the applicable limiting language prevents it from applying to Appellant's claims made with regard to his compensation under the Commercial Bonus Program.

The sole basis for Appellee's motion to dismiss is found in the Rules of <u>Conditional</u> Bonus Plan ("Rules"). Section 14 of the Rules, titled "Governing law and jurisdiction" states "English law governs these Rules and all Awards and their construction. The English Courts have exclusive jurisdiction in respect of disputes arising under or in connection with these Rules or any Award."[48]

As the basis for its contention that Appellant is not allowed to bring his claims under the *Commercial* Bonus Program in a U.S. court is a section of the Rules, the District Court needed to properly interpret these Rules to which the Parties had purportedly agreed. A key rule of contract interpretation followed by Texas courts that federal courts have applied

---

[48] <u>ROA.54</u>.

in the context of interpreting the scope and nature of forum selection clauses is the need to "examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless."[49] If provisions appear to conflict, courts must consider whether conflicting provisions can be "harmonized."[50]

Despite this long-standing rule of contract interpretation, the District Court did not consider any part of the Rules other than that one provision that Appellee cited in its motion, namely, the section titled "Governing law and jurisdiction." By narrowly focusing on just a single provision of the 12-page Rules document, the Magistrate Judge disregarded the mandate of contract interpretation under Texas law to "examine the entire agreement."

---

[49] *Fintech Fund*, 327 F. Supp. 3d 1007, 1025 (S.D. Tex. 2021) citing *MCI Telecommunications Corp. v. Texas Utilities Electric Co.*, 995 S.W.2d 647, 652 (Tex. 1999).

[50] *See O'Shaughnessy v. Young Living Essential Oils*, L.C., 810 Fed. App'x 308, 312 (5th Cir. 2020) (finding that a variety of agreements governing the employment relationship and compensation should be read together to give effect to each term); *see also Lizalde v. Vista Quality Markets*, 746 F.3d 222 (5th Cir. 2014) (looking at two agreements together and finding no indication that the parties intended a broader termination provision found in a benefit plan to also apply to the arbitration agreement; the "deliberate wording makes it difficult to accept that the parties intended for the unconstrained termination provision" to apply to a different agreement).

Here, the forum selection clause contained in the Rules should not have been evaluated in isolation from the rest of the document. An examination of the entire Rules document makes clear that Appellee's contention that they applied broadly to encompass other components of an eligible employees' compensation, which includes the amount determined under the Corporate Bonus Program. In fact, the Rules explicitly state their application is limited.

Specifically, Section 11 of the Rules titled "Relationship with terms of a Participant's employment" stated that[51]:

> (c) Nothing in the Rules or in the terms of or the practice of granting Awards forms part of an Employee's contract of employment. The rights and obligations arising from the employment relationship between the Employee and any Member of the Group are separate from, and are not affected by, these Rules or any Awards made. The grant of an Award does not create any right to, or expectation of, the grant of an Award on the same basis, or at all, in the future.

The plain language of Provision 11(c) makes clear that the Rules that contain the forum selection clause upon which both Appellee and the M&R rely were not intended to affect any other "rights and obligations arising from the employment relationship between the Employee and any Member of the Group." An employee's rights and their Shell employer's obligations are "separate" from these Rules. In other words, the

---

[51] ROA.73.

21

agreement limits the scope of its own application to only apply to the Awards made under the Conditional Bonus Plan.

Applying this provision to the current matter, the Rules clearly state that they are **not** to affect the rights and obligations arising from Dimech's employment relationship with STUSCO. The determination of Appellant's non-Conditional Bonus Plan Award compensation from STUSCO is among the rights and obligations arising from Appellee and Appellant's employment relationship. Thus, calculation of the Commercial Bonus Program compensation and disputes regarding such would be outside of the coverage of the Rules.

In order for Section 11(c) of the Rules to have meaning, its limiting provision to not affect any other rights or obligations of employment other than the Conditional Bonus Plan awards must be realized. The District Court's opinion failed to give Section 11(c) of the Rules. Thus, its Order giving expansive coverage of the forum selection clause is inconsistent with Texas law on contract interpretation.[52]

---

[52] See *MCI Telecommunications Corp.*, 995 S.W.2d at 652.

22

Even if Section 11(c)'s clear language limiting application of the Rules were to be construed as creating an ambiguity or inconsistency with the wording of the forum selection clause, a proper interpretation of Texas law should have resulted in a recommendation that the Rules have no application over the dispute in this lawsuit. Texas law would still be the applicable governing law for the interpretation of contracts, and it mandates the construing of any ambiguities or inconsistent provisions in a contract "strictly against the party that drafted it."[53]

As Appellee was the sole drafter of the Rules that it asserts apply, any inconsistency between the wording of the FSC and limitations 11(c) impose on the application of the Rules would need to be strictly construed against STUSCO. A proper application of this contractual interpretation rule would result in Section 11(c)'s statements of limited application undermining Appellee – as the drafter – being able to assert a broad coverage of the Rules' forum selection clause to the terms of Dimech's employment with STUSCO, including any dispute involving his compensation under the Commercial Bonus Program, since it is

---

[53] *Fintech Fund*, 327 F. Supp. 3d at 1025-26 citing *Bexar County Hospital District v. Factory Mutual Insurance Co.*, 475 F.3d 274, 277 (5th Cir. 2007) (citing *Gonzalez v. Mission American Insurance Co.*, 795 S.W.2d 734, 737 (Tex. 1990).

23

determined separately from the Rules covering the Conditional Bonus Plan Award.

## IV.   The District Court Did Not Conduct a Correct Analysis to Determine the Applicable Law for Interpreting the Forum Selection Clause.

Though the M&R properly notes that while "[f]ederal law governs the enforceability of a forum selection clause, [ ] state law governs its interpretation,[54] the District Court only cites and follows federal common law in its analysis of the nature and scope of the forum selection clause.[55] Such analysis is in erroneous and subjects the District Court's Order to reversal.

In its analysis of the applicable scope of the forum selection clause, the M&R only cites one federal district court case, *Wellogix, Inc. v. SAP Am., Inc.*, 58 F. Supp. 3d 766 (S.D. Tex. 2014) for the directive for the court to "look[] to the language of the contract" when determining the FSC's scope.[56]

---

[54] *Doe v. Facebook*, No. CV-H-22-0226, 2023 WL 3483891 at *3 (S.D.Tex. May 16, 2023) and *Robinson v. Brahma Group, Inc.*, No. 4:23-CV-4290, 2024 WL 1962891, at *3 (S.D. Tex. May 3, 2024)

[55] ROA.134.

[56] ROA.133-134.

Moreover, the *Wellogix* district court opinion and its reliance on federal law to determine the scope of a forum-selection clause pre-dates the Fifth Circuit's clear holding to the contrary that a district court is "bound" to engage in a choice-of-law analysis... to determine what substantive law should guide this court's interpretation of the FSC."[57] This is particularly true when a federal court's jurisdiction arises under diversity standards.[58]

The District Court's improper reliance solely on federal common law to guide its interpretation of the forum selection clause from the Rules undermines its validity. Given the District Court's flawed foundation for its ruling, its conclusion should be reversed.

## V. The District Court's Multiple Factual Errors Demonstrate An Unreliability of a Correct Reading of the Record that Makes It Analysis Suspect.

In addition to not following the established law of this Circuit and not conducting a thorough analysis to construe the meaning of the forum selection clause found in the Rules, the District Court's analysis contains clear factual errors about the distinctions between the Commercial

---

[57] *Weber v. PACT XPP Technologies, AG,* 811 F.3d 758, 770 (5th Cir. 2016).
[58] *Id.*

Bonus Program and the Conditional Bonus Plan that are at the heart of this matter. Such errors indicate the District Court's Order is based on an inaccurate reading of the record making its analysis unreliable, and, therefore, should be reversed.

The first example of the District Court's confusion of these two critically distinctive compensation components for commercial trade employees is found in the document's opening paragraph. After noting that the "CBP" will refer to the "Commercial Bonus Program," in the very next sentence of the M&R, it states that Defendant's Motion is "based on a forum selection clause in the CBP Agreement."[59] However, as has been clear throughout the briefing in this matter, no written Commercial Bonus Program Agreement was ever introduced by either Party, much less one that contains a forum selection clause. Thus, the District Court's analysis demonstrates a mistaken interchanging of the *Commercial* Bonus Program for the Conditional Bonus Plan from the outset.[60]

Likewise, the District Court's acceptance of the forum selection clause's application is supported by the forum selection clause's use of the

---

[59] ROA.129.

[60] *Id.*

term "any Award," thus, per the District Court's reasoning, the Commercial Bonus Program Award was encompassed.[61] However, the term "Award" was defined in the Rules as "any award made under these Rules."[62]

These interchanging of terms in the District Court's analysis reflect at best mistakes regarding its understanding of significant facts in this matter. At worst, these confusion of the Commercial Bonus Program with the Conditional Bonus Plan demonstrates a presumption of the interrelationship of these distinct compensation components and undermines the credibility of the analysis underlying the Court's Order. Whichever reason for these blatant factual errors, this Court should reverse the District Court's Order as it rests on an unreliable reading of the record.

## CONCLUSION

This Court should reverse the District Court's order adopting the Memorandum and Recommendation of the Magistrate Judge to grant Appellee's Motion to Dismiss for Forum *Non Conveniens* and remand this

---

[61] ROA.135
[62] ROA.67

matter so that Appellant may pursue his claims in the District Court below.

Respectfully submitted,

LAW OFFICE OF DAVID J. QUAN

By: /s/ David J. Quan

David J. Quan

dquan@davidquanlaw.com

State Bar No. 16422300

4545 Bissonnet St., Suite 298

Bellaire, Texas 77401

(713) 225-5300 – Telephone

(713) 583-9795 – Facsimile

**ATTORNEY FOR APPELLANT JOHN DIMECH**

## CERTIFICATE OF COMPLIANCE

This is to certify that this computer-generated Brief of Appellant contains 4,653 words.

1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(A)(7)(B) because:

- this brief contains 4,653 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

2. This brief also complies with the typeface requirements of FED. R. APP. P. 32(A)(5) and the type requirements of FED. R. APP. P. 32(A)(6) because:

- this brief has been prepared in a proportionally spaced typeface using Microsoft Word with a 14-point font named Century Schoolbook.

*/s/ David J. Quan*
David J. Quan
March 16, 2026

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument was forwarded to all counsel of record by electronic filing in accordance with the Federal Rules of Appellate Procedure on March 16, 2026.

Shauna Johnson Clark
*shauna.clark@nortonrosefulbright.com*
Heather Sherrod
*heather.sherrod@nortonrosefulbright.com*
Warren Huang
*warren.huang@nortonrosefulbright.com*
NORTON ROSE FULBRIGHT US LLP
1550 Lamar St., Suite 2000
Houston, TX 77010

*/s/ David J. Quan*
David J. Quan

29