**CASE NO. 25-20433**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

**JOHN DIMECH**,

*Plaintiff-Appellant*

v.

**SHELL TRADING (US) CO.**,

*Defendant-Appellee*

---

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division
Cause No. 4:25-CV-00252,

---

**PROPOSED SUFFICIENT RECORD EXCERPTS
OF APPELLANT JOHN DIMECH**

---

David J. Quan
Texas Bar No. 16422300
*dquan@davidquanlaw.com*
LAW OFFICE OF DAVID J. QUAN
4545 Bissonnet St., Suite 298
Bellaire, Texas 77401
Telephone: (713) 225-5300
Facsimile: (713) 583-9795

**ATTORNEY FOR APPELLANT**

# TABLE OF CONTENTS

**Tab #**                                                                              **ROA**

1          Docket Sheet…………………………………….          ROA.1

2          Notice of Appeal…………………………………...          ROA.204

3          Final Judgment……………………………….…          ROA.203

4          Order Adopting Magistrate Judge's
           Memorandum and Recommendation………...          ROA.202

5          Memorandum and Recommendation………...          ROA.129

6          Plaintiff's Original Petition…………………...          ROA.16

7          Plaintiff's Objections to the July 14, 2025
           Memorandum and Recommendation………...          ROA.144

8          Certificate of Service…………………………...

TAB 1

# U.S. District Court
# SOUTHERN DISTRICT OF TEXAS (Houston)
# CIVIL DOCKET FOR CASE #: 4:25-cv-00252
# Internal Use Only

| | |
|---|---|
| Dimech v. Shell Trading (US) Company | Date Filed: 01/21/2025 |
| Assigned to: Judge Sim Lake | Date Terminated: 08/28/2025 |
| Referred to: Magistrate Judge Christina A Bryan | Jury Demand: Plaintiff |
| Demand: $29,400,000 | Nature of Suit: 190 Contract: Other |
| Case in other court:  269th Judicial District Court, Harris County, Texa, 25-03854 | Jurisdiction: Diversity |
| Cause: 28:1332 Diversity-Breach of Contract | |

**Plaintiff**

**John Dimech**                     represented by     **David J Quan**
Law Office of David J. Quan
5444 Westheimer Road, Suite 1700
Houston, TX 77056
713-225-5300
Fax: 713-625-9222
Email: dquan@davidquanlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Shell Trading (US) Company**        represented by     **Shauna Johnson Clark**
Norton Rose Fulbright US LLP
1550 Lamar
Suite 2000
Houston, TX 77010
713-651-5601
Email:
shauna.clark@nortonrosefulbright.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/21/2025 | 1 (p.5) | NOTICE OF REMOVAL from 269th Judicial District Court, Harris County, Texas, case number 2025-03854 (Filing fee $ 405 receipt number ATXSDC-32788901) filed by Shell Trading (US) Company. (Attachments: # 1 (p.5) Exhibit A, # 2 (p.38) Exhibit B, # 3 (p.40) Exhibit C, # 4 (p.45) Exhibit D, # 5 (p.86) Exhibit E, # 6 (p.94) Exhibit F, # 7 (p.96) Civil Cover Sheet) (Clark, Shauna) (Entered: 01/21/2025) |

| | | |
|---|---|---|
| 01/22/2025 | | Referral Judge Selected: Magistrate Judge Christina A. Bryan randomly selected to receive referrals. The selected Magistrate Judge is not assigned to this case until a District Judge refers the case or a motion or the parties consent to jurisdiction of the Magistrate Judge. Once a referral has been made, the name of the referral judge will appear at the top of the docket sheet. (bkt4) (Entered: 01/22/2025) |
| 01/22/2025 | 2 (p.38) | CLERKS NOTICE Regarding Consent to Jurisdiction of Magistrate Judge. Parties notified, filed. (bkt4) (Entered: 01/22/2025) |
| 01/28/2025 | 3 (p.40) | ORDER for Initial Pretrial and Scheduling Conference and Order to Disclose Interested Persons. Initial Conference set for 3/7/2025 at 2:00 PM in Courtroom 9B before Judge Sim Lake. (Signed by Judge Sim Lake) Parties notified. (sra4) (Entered: 01/28/2025) |
| 02/11/2025 | 4 (p.45) | MOTION to Dismiss *for Forum Non Conveniens* by Shell Trading (US) Company, filed. Motion Docket Date 3/4/2025. (Attachments: # 1 (p.5) Exhibit A, # 2 (p.38) Proposed Order) (Clark, Shauna) (Entered: 02/11/2025) |
| 02/25/2025 | 5 (p.86) | JOINT DISCOVERY/CASE MANAGEMENT PLAN by Shell Trading (US) Company, filed. (Clark, Shauna) (Entered: 02/25/2025) |
| 02/26/2025 | 6 (p.94) | ORDER - CASE REFERRED to Magistrate Judge Christina A. Bryan. Parties to advise court w/in 20 days if they will consent to Judge Bryan.  **\*\*\* Initial Pretrial and Scheduling Conference set on March 7, 2025 at 2:00pm is CANCELED \*\*\*** (Signed by Judge Sim Lake) (Attachments: # 1 (p.5) Consent Form) Parties notified. (sra4) (Entered: 02/26/2025) |
| 03/05/2025 | 7 (p.96) | RESPONSE to 4 (p.45) MOTION to Dismiss *for Forum Non Conveniens* filed by John Dimech. (Attachments: # 1 (p.5) Affidavit, # 2 (p.38) Proposed Order) (Quan, David) (Entered: 03/05/2025) |
| 03/05/2025 | 8 (p.110) | Unopposed MOTION for Leave to File Response to Motion to Dismiss for Forum Non ConveniensMotions referred to Christina A Bryan. by John Dimech, filed. Motion Docket Date 3/26/2025. (Attachments: # 1 (p.5) Proposed Order) (Quan, David) (Entered: 03/05/2025) |
| 03/05/2025 | 9 (p.115) | ORDER GRANTING 8 (p.110) Motion for Leave to Have Response Considered by the Court.(Signed by Magistrate Judge Christina A Bryan) Parties notified. (mem4) (Entered: 03/05/2025) |
| 03/11/2025 | 10 (p.116) | REPLY in Support of 4 (p.45) MOTION to Dismiss *for Forum Non Conveniens*, filed by Shell Trading (US) Company. (Attachments: # 1 (p.5) Exhibit A) (Clark, Shauna) (Entered: 03/11/2025) |
| 07/14/2025 | 11 (p.129) | MEMORANDUM AND RECOMMENDATIONS re 4 (p.45) MOTION to Dismiss *for Forum Non Conveniens*. Objections to M&R due by 7/28/2025 (Signed by Magistrate Judge Christina A Bryan) Parties notified. (mem4) (Entered: 07/14/2025) |

| | | |
|---|---|---|
| 07/23/2025 | 12 (p.137) | MOTION for Extension of Time File Objection to Magistrate Judge's Memorandum and RecommendationMotions referred to Christina A Bryan. by John Dimech, filed. Motion Docket Date 8/13/2025. (Attachments: # 1 (p.5) Proposed Order Proposed Order) (Quan, David) (Entered: 07/23/2025) |
| 07/25/2025 | 13 (p.142) | ORDER Granting in Part 12 (p.137) Motion for Extension of Time. Plaintiff must file any objections to the Court's M&R (ECF 11 (p.129) ) on or before August 4, 2025. (Signed by Magistrate Judge Christina A Bryan) Parties notified. (mem4) (Entered: 07/25/2025) |
| 08/05/2025 | 14 (p.144) | OBJECTIONS to 11 (p.129) Memorandum and Recommendations, filed by John Dimech. (Attachments: # 1 (p.5) Proposed Order) (Quan, David) (Entered: 08/05/2025) |
| 08/06/2025 | 15 (p.178) | Joint MOTION to Modify Deadlines for Filing Objections and Response to the Objections Motions referred to Christina A Bryan. by John Dimech, filed. Motion Docket Date 8/27/2025. (Attachments: # 1 (p.5) Proposed Order) (Quan, David) (Entered: 08/06/2025) |
| 08/07/2025 | 16 (p.184) | ORDER granting 15 (p.178) Joint Motion to Modify. Deadline for Defendant's Response to Objections: August 22, 2025. (Signed by Magistrate Judge Christina A Bryan) Parties notified. (mem4) (Entered: 08/07/2025) |
| 08/15/2025 | 17 (p.186) | RESPONSE to 14 (p.144) Objections to Memorandum and Recommendations , filed by Shell Trading (US) Company. (Clark, Shauna) (Entered: 08/15/2025) |
| 08/28/2025 | 18 (p.202) | ORDER ADOPTING MEMORANDUM AND RECOMMENDATIONS re: the Magistrate Judge's 11 (p.129) Memorandum and Recommendations is hereby ADOPTED by this court. Defendant's 4 (p.45) MOTION to Dismiss *for Forum Non Conveniens* is GRANTED. This case is DISMISSED WITHOUT PREJUDICE to filing in the appropriate forum. (Signed by Judge Sim Lake) Parties notified. (sra4) (Entered: 08/28/2025) |
| 08/28/2025 | 19 (p.203) | FINAL JUDGMENT - In accordance with the Order adopting the Magistrate Judge's July 14, 2025 11 (p.129) Memorandum and Recommendation, it is hereby ORDERED and ADJUDGED that this case is DISMISSED WITHOUT PREJUDICE to filing in the appropriate forum...** Case terminated on 8/28/25. (Signed by Judge Sim Lake) Parties notified. (sra4) (Entered: 08/28/2025) |
| 09/25/2025 | 20 (p.204) | NOTICE OF APPEAL to US Court of Appeals for the Fifth Circuit re: 19 (p.203) Final Judgment, 18 (p.202) Order Adopting Memorandum and Recommendations, by John Dimech (Filing fee $ 605, receipt number ATXSDC-34202168), filed. (Quan, David) (Entered: 09/26/2025) |
| 09/29/2025 | 21 (p.206) | Clerks Notice of Filing of an Appeal. The following Notice of Appeal and related motions are pending in the District Court: 20 (p.204) Notice of Appeal. Fee status: Paid, filed. (Attachments: # 1 (p.5) Notice of Appeal) (mp1) (Entered: 09/29/2025) |

| | | |
|---|---|---|
| 09/29/2025 | | Appeal Review Notes re: 20 (p.204) Notice of Appeal. Fee status: Paid. The appeal filing fee has been paid or an ifp motion has been granted.No hearings were held in the case - no transcripts. Number of DKT-13 Forms expected: 1, filed. (mp1) (Entered: 09/29/2025) |
| 10/09/2025 | | (Court only) Set/Cleared Flags. APPEAL_NAT flag cleared. (jrl1) (Entered: 10/09/2025) |
| 10/09/2025 | | (Court only) ***(PRIVATE ENTRY) EROA requested by the Fifth Circuit, due on 10/23/2025 (25-20433), filed. (jrl1) (Entered: 10/09/2025) |

# TAB 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JOHN DIMECH** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:25-cv-00252 |
| | § | |
| **SHELL TRADING (US) CO.,** | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFF JOHN DIMECH'S NOTICE OF APPEAL**

Notice is hereby given that Plaintiff John Dimech appeals to the United States Court of Appeals for the Fifth Circuit from the district court's Final Judgment entered on August 28, 2025 (Dkt No. 19) and Order entered on August 28, 2025 (Dkt No. 18). Signed on September 24, 2025

Respectfully submitted,

LAW OFFICE OF DAVID J. QUAN

*/s/ David J. Quan*

David J. Quan
TX State Bar No. 16422300
Federal ID No. 20073
4545 Bissonnet St., Suite 298
Bellaire, TX 77401
dquan@davidquallaw.com

***Attorney-in-Charge for Plaintiff John Dimech***

1

Case 25-20433    Document 207    Filed 09/25/25 in TXSD    Page 2 of 2

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that, on September 25, 2025, a true and correct copy was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record who are registered in this matter.

*/s/ David J. Quan*
David J. Quan

25-20433.205

TAB 3

United States District Court
Southern District of Texas

**ENTERED**

August 28, 2025

Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN DIMECH, | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:25cv0252 |
| | § | |
| SHELL TRADING (US) COMPANY, | § | |
| *Defendant* | § | |

## FINAL JUDGMENT

In accordance with the Order adopting the Magistrate Judge's July 14, 2025 Memorandum and Recommendation (Dkt. 11), it is hereby **ORDERED** and **ADJUDGED** that this case is **DISMISSED WITHOUT PREJUDICE** to filing in the appropriate forum.

**SIGNED** at Houston, Texas this **28th** day of August, 2025.

_____

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

25-20433.203

# TAB 4

United States District Court
Southern District of Texas
**ENTERED**
August 28, 2025
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JOHN DIMECH, | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:25cv0252 |
| | § | |
| SHELL TRADING (US) COMPANY, | § | |
| *Defendant.* | § | |

## ORDER ADOPTING MAGISTRATE JUDGE'S MEMORANDUM AND RECOMMENDATION

Having reviewed the Magistrate Judge's Memorandum and Recommendation dated July 14, 2025 (Dkt. 11), the objections thereto (Dkt. 14), and the response to the objections (Dkt. 17), the court is of the opinion that said Memorandum and Recommendation should be adopted by this court. It is therefore **ORDERED** that the Magistrate Judge's Memorandum and Recommendation is hereby **ADOPTED** by this court. This case is **DISMISSED WITHOUT PREJUDICE** to filing in the appropriate forum.

**SIGNED** at Houston, Texas this **28th** day of August, 2025.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

25-20433.202

# TAB 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JOHN DIMECH,<br>*Plaintiff,* | § § § | |
| V. | § §  | CIVIL ACTION NO. 4:25-CV-0252 |
| SHELL TRADING (US)<br>COMPANY,<br>*Defendant.* | § § § § | |

**MEMORANDUM AND RECOMMENDATION**

Plaintiff John Dimech, a citizen and resident of Australia, is suing Defendant Shell Trading (US) Company (STUSCO) to recover millions allegedly due him under the STUSCO Commercial Bonus Program (CBP).[1] ECF 1-3. After "snap removal" of the case to federal court based on diversity subject matter jurisdiction,[2] Defendant filed a Motion to Dismiss for Forum Non Conveniens based on a forum selection clause in the CBP Agreement. ECF 3. Having reviewed the parties' submissions and the law, the Court recommends that Defendant's motion be granted and this case be dismissed without prejudice to refiling in the appropriate forum.

---

[1] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. ECF 6.

[2] The Fifth Circuit recognizes that a forum defendant who has yet to be "properly joined and served" may remove a case to federal court. *Anaya v. Schlumberger Tech. Corp*., No. 24-20170, 2024 WL 5003579, at *3 (5th Cir. Dec. 6, 2024); *Texas Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 487 (5th Cir. 2020). The forum-defendant rule is procedural and is not jurisdictional. *Texas Brine*, 955 F.3d at 487.

25-20433.129

## I.    Factual and Procedural Background

Plaintiff Dimech worked for STUSCO in Harris County, Texas until July 2021 when he relocated to Australia.  STUSCO is a U.S. corporation that acts as the "single oil trading market interface" for Shell, plc, a corporation based in the United Kingdom f/k/a Royal Dutch Shell.  ECF 1-3 ¶¶2-3, 7.  Dimech was a participant in the STUSCO bonus program, overseen by the Bonus Oversight Committee.  One component of a participant's annual bonus is the CBP, another component is the "Conditional Bonus Plan."  ECF 7-1 ¶ 6; ECF 10-1 ¶4.  On March 31, 2020, Dimech was awarded a total annual bonus of $8,170,000—the first $100,000 distributed in cash, 60% of the remaining $8,070,000 ($4,940,000) also paid in cash, and the remaining 40% of $8,070,000 ($3,060,000) contributed to the Conditional Bonus Plan.  ECF 10-1 ¶5; ECF 7-1¶6; ECF 4-1 at 20.

Plaintiff's Original Petition alleges that STUSCO consistently informed him and other employees that both the factors and the weight assigned to the factors in the CBP computation would not change for 2020, despite the COVID-19 pandemic.  ECF 1-3 ¶¶ 12-14.  Plaintiff's Original Petition alleges that "[h]ad the factors for change in year-to-year profitability and increase in performance ranking been applied in the manner that had previously been used for CBP calculation, Dimech's Commercial Bonus Program payment would have been multiples of the amount of his 2020 CBP payment.  This represents a shortfall of approximately $29,400,000.00

25-20433.130

for 2020 financial year." ECF 1-3 ¶21. Plaintiff asserts causes of action against STUSCO for breach of contract, fraud, and fraud in the inducement. Defendants move to dismiss Plaintiff's claims based on a forum selection clause in The Rules of the Shell Trading Conditional Bonus Plan for Awards granted in 2020 (Rules). ECF 4-1 at 5-16.

## II.    Forum Non Conveniens Standards

A party may seek to enforce a forum-selection clause requiring a foreign forum through a motion to dismiss for forum non conveniens. *Noble House, L.L.C. v. Certain Underwriters at Lloyd's, London*, 67 F.4th 243, 247 (5th Cir. 2023) (quoting *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct.*, 571 U.S. 49, 60 (2013)). In deciding whether a valid, enforceable forum selection clause exists, "the court evaluates whether the forum selection clause is mandatory or permissive, is valid, and whether the parties' dispute falls within the scope of the clause." *Doe v. Facebook, Inc.*, No. CV H-22-0226, 2023 WL 3483891, at *3 (S.D. Tex. May 16, 2023). Federal law governs the enforceability of a forum selection clause, while state law governs its interpretation. *Id.*; *Robinson v. Brahma Grp., Inc.*, No. 4:23-CV-4290, 2024 WL 1962891, at *3 (S.D. Tex. May 3, 2024).

When no valid, enforceable forum selection clause governs a dispute, a party seeking dismissal in favor of a foreign forum must show: (1) the existence of an available and adequate alternate forum; and (2) that the balance of private and public

3

interest factors favor dismissal. *Noble House*, 67 F.4th at 248; *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003). However, when an enforceable forum selection clause exists, the plaintiff's choice of forum carries no weight and the private interest factors weigh entirely in favor of the contractually selected forum. *Noble House*, 67 F.4th at 248. Therefore, where an enforceable forum selection clause exists, it will be enforced unless enforcement is unreasonable and the public interest weighs against enforcement. *Id.* The Fifth Circuit has stated:

> Unreasonableness potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Id.* (citations omitted).

## III.   Analysis

As discussed above, the Court must first determine whether the forum selection clause is mandatory versus permissive, and then whether the clause is valid and encompasses the claims in this case. *Doe*, 2023 WL 3483891, at *3. Plaintiff does not argue that the forum selection clause is permissive or invalid. *See* ECF 7. The Court therefore need only address whether Plaintiff's claims in this case fall within the scope of the forum selection clause.

25-20433.132

**A. The forum selection clause at issue encompasses Plaintiff's claims.**

The Rules of the Shell Trading Conditional Bonus Plan for Awards granted in 2020 (Rules) contains the following provision:

> English law governs these Rules and all Awards and their construction. The English Courts have exclusive jurisdiction in respect of disputes arising under or in connection with these Rules or any Award.

ECF 4-1 at 15.

Plaintiff argues that the forum selection clause does not apply here because it is it included in the Rules governing the *Conditional* Bonus Plan and his claims are exclusively related to his *Commercial* Bonus. *Id.* at 5-7. Plaintiff's arguments are unsupported by the record and the law.

Plaintiff's characterization of his claims as challenging only his CBP Award are belied by his Response and Affidavit. *See* ECF 7 at 6 (stating that "the Commercial Bonus Award [Plaintiff] is contesting was in the amount of $8,100,00.00"); ECF 7-1 ¶9 (stating that the bonus he "contend[s] was out of compliance and contrary to representations was in the amount of $8,100,000.00"); ECF 10 ¶¶4-5 (attesting that Plaintiff received a $8,170,000 total bonus award, of which $3,060,000 was contributed to the Conditional Bonus Plan.). Thus, it is evident that Plaintiff is challenging the sufficiency of his total $8,100,000 bonus, not merely the non-conditional amount ($100,000 + $4,940,000) paid in cash.

5

25-20433.133

Even if the Court were to accept Plaintiff's contention that he is challenging only the CBP portion of his 2020 bonus, these claims fall within the scope of the forum selection clause. "To determine whether a claim falls within the scope of a forum-selection clause, a court looks to the language of the contract." *Wellogix, Inc. v. SAP Am.*, Inc., 58 F. Supp. 3d 766, 777 (S.D. Tex. 2014). The forum selection clause in the Rules encompasses all disputes "arising under *or in connection with . . . any Award.*" ECF 4-1 at 15 (emphasis added). Plaintiff's 2020 CBP Award and his Conditional Bonus Award are inextricably intertwined. The Conditional Bonus is a percentage of the total CBP bonus. Any challenge to the CBP is necessarily also a challenge to, and therefore "in connection with," the Conditional Bonus Award.

**B. Enforcement of the forum selection clause is neither unreasonable nor contrary to public interest.**

Plaintiff argues that the private and public interest factors applicable to a forum non conveniens analysis weigh against dismissal. ECF 7 at 7-10. However, because Plaintiff's claims are subject to an enforceable forum selection clause, the private interest factors weigh entirely in favor of the contractually selected forum. *Noble House*, 67 F.4th at 248; *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003). Therefore, the forum selection clause must be enforced unless doing so is unreasonable and the public interest weighs against enforcement. *Id.*

Plaintiff's Response fails to address the relevant factors for determining whether enforcement of a forum selection clause is unreasonable. *Noble House*, 67

6

25-20433.134

Case 25-20433    Document 17    Filed 05/18/2026    Page 22 of 8

F.4th at 248 (setting forth 4 factors: (1) fraud in creating the clause; (2) deprivation of a party's "day in court" because of "grave inconvenience or unfairness;" (3) whether the chosen law will deprive the plaintiff of a remedy; or (4) contravention of a strong public policy of the forum state.).  Plaintiff argues that public interest factors weigh in favor of a Texas forum because he and his team worked in Texas and Texas jurors and courts are more familiar with Texas law.  He also argues that it would be unfair to "saddle" citizens of the U.K. with "having to determine this matter regarding the dispute over the proper compensation owed by an American company to an individual who was a U.S. Person at the time of the controversy pursuant to Texas state law."  Plaintiff's arguments are unfounded.  The forum selection clause includes a choice of law provision mandating that his claims be decided under English law.  ECF 4-1 at 15.  Moreover, Plaintiff is not a U.S. citizen and does not reside in Texas.  And, while STUSCO is an American company, the bonus program is administered by a Bonus Oversight Committee, key members of which reside and work in London, England.  ECF 4-1 at 2, ¶4; 10-1 ¶6.

Plaintiff has not met his burden to show that it would be unreasonable and against the public interest to enforce the forum selection clause.

25-20433.135

## IV.     Conclusion and Recommendation

For the reasons set forth above, the Court RECOMMENDS that Defendant's Motion to Dismiss (ECF 4) be GRANTED and this case be DISMISSED WITHOUT PREJUDICE to refiling in an English Court.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(C).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on July 14, 2025, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge

8

25-20433.136

# TAB 6

1/17/2025 11:56 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 96384021
By: Charlie ` Keys
Filed: 1/17/2025 11:56 PM

2025-03854 / Court: 269

CAUSE NO. _____

| | | |
|---|---|---|
| **JOHN DIMECH,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | |
| | § | **OF HARRIS COUNTY, TEXAS** |
| **SHELL TRADING (US) CO.,** | § | |
| | § | |
| **Defendant.** | § | **_____ JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES JOHN DIMECH ("Dimech" or "Plaintiff"), and files this his Original Petition against Defendant SHELL TRADING (U.S.) CO. ("STUSCO") would respectfully show the Court as follows:

## DISCOVERY CONTROL PLAN

1. This case should proceed as a level 2 case under Rule 190.3 of the Texas Rules of Civil Procedure.

## PARTIES

2. Plaintiff. John Dimech, during all relevant periods of time involved in this matter, worked for Defendant in Harris County, Texas, where he resided for more than ten years. Dimech is a citizen of Australia, who transferred to Texas as an intra-company visa holder lawfully who was authorized to work in the United States. During the course of his time in the U.S., Dimech became a permanent resident.

3. Defendant. Shell Trading (U.S.) Co. is a Delaware corporation with its principal place of business in Houston, Texas at 1000 Main St., Suite 1700, Houston, Texas 77002. STUSCO

Certified Document Number: 118517992 - Page 1 of 11

is a business unit of Shell, plc ("Shell"), which is a foreign corporation that is based in the United Kingdom. STUSCO can be served through its Registered Agent for Service of Process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## VENUE

4. Venue is proper in Harris County, Texas because the acts complained of occurred, in whole or in part, in Harris County, Texas.

## JURISDICTION

5. Jurisdiction is proper in this Court because the damages are within the jurisdictional limits of the Court.

6. This Court has jurisdiction over the Defendant because the acts complained of in this lawsuit took place within the state of Texas.

## FACTS

Background

7. Defendant STUSCO is the U.S. corporation that acts as the single oil trading market interface for Shell, plc, formerly known as Royal Dutch Shell. It focuses on petroleum, petroleum by-products, and petroleum derivatives. STUSCO has an extensive portfolio of products and services associated with crude oil and product trading, including shipping services.

8. Plaintiff Dimech had a lengthy and decorated career at STUSCO eventually serving as the Company's President from 2016 through 2021 and also serving as General Manager North America Crude Oil Trading (2010 through 2021).

9. Dimech's more than 20-year tenure with Shell Trading (30 years with Shell) was marked by excellent performance and dedication to the Company and resulted in him becoming the President of one of Shell's most profitable entities.

2

Certified Document Number: 118517992 - Page 2 of 11

10.     Due to his lengthy tenure in the leadership of STUSCO, Dimech (a) helped to shape the formalization of, (b) calculated bonuses under, and (c) administered the Shell Trading Commercial Bonus Program ("CBP"). The CBP is a significant component of compensation for STUSCO's commercial employees. Dimech administered the CBP for groups with significant number of employees in North America (80 employees), as well as Singapore (18 employees) for 15 years.

11.     Due to his experience as both an administrator and beneficiary of the CBP, as well as his tenure and seniority, Dimech also was significantly involved in the most recent internal comprehensive review of the CBP in 2018. Consequently, he is very familiar with the bonus program's mechanics.

12.     Defendant determines the annual bonus (comprising cash and conditional components) portion of its commercial personnel pursuant to a rigorous process.  Per the CBP, the annual bonus component is made on the basis of certain key factors pertaining to the individual, namely:

(a)     direct business profitability;

(b)      the individual's performance rating which encompasses a suite of behavioral dimensions (compliance, control, leadership, collaboration, etc.),

(c)      the overall Shell Trading profitability, and

(d)     prevailing market conditions for traders and commercial personnel in the relevant human-resource market.

13.     The significance that Shell attributed to the first factor – direct business profitability – was evident from the Company's frequently communicated mantra that "every dollar made contributes to the bonus funding pool equally" and was borne out by the historical fact pattern.

3

Certified Document Number: 118517992 - Page 3 of 11

14.     During 2020, Shell's leadership consistently reiterated and reinforced this position to Mr. Dimech and his peers, and furthermore, directed him to cascade this message to his reports, when there was so much turbulence and uncertainty in the global energy market due to the world-wide impact of the COVID-19 pandemic.

15.     Shell's executives' constant confirmation that the CBP's administration would not be altered during 2020 was key to Dimech remaining in Defendant's employment through the challenges to global commerce and personal safety resulting from the coronavirus pandemic. Dimech indicated his acceptance of these terms by continuing to not only be employed by Defendant but to also give his highest level of performance knowing that Defendant had assured him (as well as his team) that his efforts would be financially rewarded in the same manner as they had in the past based upon the criteria that had been considered in previous years.

16.     In addition to agreeing to these terms of employment and compensation, Dimech further relied upon his compensation being paid consistent with past practices, per Defendant's representations and re-confirmations. Given his lengthy experience with Defendant, he had no reasonable basis for doubting that his compensation would be treated differently.

17.     Despite these representations and the understanding between Defendant and Dimech based on the historical pattern of CBP payments which had been repeatedly re-confirmed and reinforced, Shell violated the established process and denied Mr. Dimech a substantial portion of the compensation that he was owed for his CBP component for the 2020 financial year. The amount Defendant paid Dimech for his CBP component of his compensation for the 2020 financial year represented a material and unjustified departure from the long-established contract, all prior historical bonus payments made to him, and the representations that compensation for 2020 would be calculated in the same manner as in past years.

4

Certified Document Number: 118517992 - Page 4 of 11

18.     While the amount of Dimech's past CBP payments had been -- consistent with the CBP – commensurate with his business contribution and performance rating and the other factors listed above, Defendant's CBP payment to Dimech for the 2020 financial year was practically the same as his previous year's annual bonus despite significant changes in the underlying factors, including:

(a)     In 2019, the North American crude business had set a record for the greatest contribution to Shell's profit (Net Income Before Interest and After Tax ("NIBIAT)). Yet, in 2020, this business's profit contribution doubled that record-setting year's performance. Dimech's first-hand and direct leadership of the business and the team's execution of his strategy were the reasons for such spectacular success.

(b)     On an individual level, Mr. Dimech's performance ranking increased from *Strong* (70-80% of employees) to *Higher* (top 10-15% of employees) due to increased collaboration across the Company and taking strong and robust commercial, legal and compliance positions.  He was also deemed to have demonstrated outstanding leadership.

(c)     Market forces remained strong as evidenced by the resignation of one of the most senior leaders in the Dimech's leadership team and the need for him to cover her and his own roles simultaneously for several weeks.

(d)     The pool of funds made available to Dimech's team for CBP allocations in 2020 was increased by 30% from the CBP pool for 2019 reflecting that the value of Dimech's team's work was of significant value to the overall Company.  And the mechanics of the allocation process within Mr. Dimech's team remained consistent with prior practice.

(e)     There were repeated communications and assurances by Shell Trading executives throughout 2020 that there would not be a change to the traders' Commercial Bonus Program.

19.     Defendant's departure from its stated, historical, and agreed upon factors in determining the CBP for Mr. Dimech is evident in the lack of correlation or proportionality of Dimech's 2020 Bonus payment in comparison with the history of the most recent previous years as set forth in the following table (in order to avoid any potential concerns regarding potential

Certified Document Number: 118517992 - Page 5 of 11

25-20433.20

confidentiality, the term "units" has been used for indicative purposes instead of an unstated dollar amount):

| Factor | 2019 | 2020 |
|---|---|---|
| Performance Ranking | Strong | Higher |
| Dimech's Business Unit Profitability | 1 unit | 1.98 units |
| Dimech's Business Unit Bonus Pool[1] | 1 unit | 1.30 units |
| Dimech's CBP payment | 1 unit | 1.08 units |

20.     As can be seen, with regard to each key metric for Dimech's CBP payment the level of increase for the 2020 financial year relative to 2019 was of a substantial percentage: performance ranking increase from being merely within the general 80% to a ranking within the top 15% of all employees; the team bonus pool increased by 30%; and the direct business profitability increased by over 98%. Yet, Dimech's CBP payment was not correlated to these outstanding numbers, as it was only increased by approximately 8%.

21.     Had the factors for change in year-to-year profitability and increase in performance ranking been applied in the manner that had previously been used for CBP calculation, Dimech's Commercial Bonus Program payment would have been multiples of the amount of his 2019 CBP payment. This represents a shortfall of approximately $29,400,000.00 for the 2020 financial year.

22.     While this figure is a substantial amount in compensation, it should be noted that it is only a small fraction of the *profits* for the Company for which Dimech was responsible during the 2020 financial year.

---

[1] The 2020 figure includes retention payments made to a supervisor who resigned.

Certified Document Number: 118517992 - Page 6 of 11

23. As Defendant is part of the Shell plc family of companies, Dimech was required to dispute this misaligned allocation for the CBP portion of his compensation for the 2020 financial year through Shell's internal dispute resolution, RESOLVE.

24. Under the RESOLVE process, a mediation was scheduled on November 8, 2021 through the American Arbitration Association ("AAA")'s International Centre for Dispute Resolution.

25. Dimech approached this mediation believing that Defendant would likewise approach the process of internal dispute resolution with good faith and mutuality and, accordingly, indicated that he was willing to resolve his dispute for a fraction of the amount that he was entitled to receive per the CBP had the represented and agreed upon factors been used.

26. Unfortunately, such belief proved to be overly optimistic as Defendant, through its counsel, proved unwilling to engage in a dialogue, provide a basis for their position in refusing to meet its compensation obligations to Dimech, or to negotiate or even to communicate with Dimech and his attorney in a manner directed to resolve the dispute.

27. Similarly, Dimech's last-ditch attempt in March 2023 to resolve his claims against Defendant informally to avoid having to proceed with formal legal action were met with a similar response from Defendant.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

28. Plaintiff incorporates the allegations stated above as if fully set forth herein.

29. The CBP was a material term of Defendant's agreement with Plaintiff about his continued employment with the Company.

7

Certified Document Number: 118517992 - Page 7 of 11

30. As described above, Defendant breached the terms of its agreement with Plaintiff by refusing to pay him the full CBP amount to which he was entitled.

31. Defendant's breach of its agreement with Plaintiff has caused Dimech to suffer monetary damages as he has not received the amount of bonus that he should have per the CBP.

## SECOND CAUSE OF ACTION
### (Fraud)

32. Plaintiff incorporates the allegations stated above as if fully set forth herein.

33. As described above, Defendant made misrepresentations to Plaintiff, including but not limited to, representations to Dimech that Defendants would pay under the CBP in the same manner and per the same criteria as it had in the past.

34. Such misrepresentations were material and at the time that they were made, known to be false. Further, they were made with the intent that the representations would be acted upon.

35. Plaintiff justifiably relied upon Defendant's misrepresentations to his detriment, including but not limited to, remaining with Defendant and engaging in extraordinary efforts at the cost of his personal life and health under the belief that such efforts would not only benefit the Company, but that such efforts would be compensated in the same manner as they had in the past.

36. As a result of Defendant's misrepresentations and Plaintiff's justifiable reliance on them, Plaintiff has been damaged.

37. Defendant knowingly engaged in these actions with malice and/or with reckless indifference to the rights of Plaintiff.

## THIRD CAUSE OF ACTION
### (Fraudulent Inducement)

38. Plaintiff incorporates the allegations stated above as if fully set forth herein.

Certified Document Number: 118517992 - Page 8 of 11

25-20433.23

Certified Document Number: 118517992 - Page 9 of 11

39.     As described above, Defendant made misrepresentations to Plaintiff, including but not limited to, representations to Dimech that Defendant would pay under the CBP in the same manner and per the same criteria as it had in the past.

40.     Such misrepresentations were material and at the time that they were made, known to be false. Further, they were made with the intent that Dimech would continue in his employment relationship with Defendant, specifically by serving as Defendant's President and General Manager -North America Crude Oil Trading.

41.     Plaintiff justifiably relied upon Defendant's misrepresentations to his detriment, including but not limited to, remaining in his leadership roles with Defendant under the belief that he would be compensated in the same manner as he had been in the past.

42.     As a result of Defendant's misrepresentations and Plaintiff's justifiable reliance on them, Plaintiff has been damaged.

43.     Defendant knowingly engaged in these actions with malice and/or with reckless indifference to the rights of Plaintiff.

**PRAYER**

44.     Plaintiff John Dimech respectfully prays that Defendant Shell Trading (US) Co. be cited to appear and answer herein and that upon a final hearing of the cause, that judgment be entered for Dimech against Defendant and that Dimech be awarded the following:

a.     The full compensation Defendant should have paid him per the terms of its contract with Dimech, namely the value of the bonus for 2020 as calculated per the CBP as applied in previous years;

b.     Reasonable attorneys' fees and expenses;

9

25-20433.24

c.      Compensatory damages; and,

d.      Punitive damages.

Plaintiff further requests all other relief to which he is justly entitled, whether in law or in equity.

Respectfully submitted,

LAW OFFICE OF DAVID J. QUAN

By:      _/s/  David J. Quan_____
David J. Quan
Texas Bar No. 16422300
5444 Westheimer Road, Suite 1700
Houston, Texas 77056
Telephone: (713) 225-5300
Facsimile: (713) 625-9222
dquan@davidquanlaw.com

ATTORNEY FOR PLAINTIFF
JOHN DIMECH

Certified Document Number: 118517992 - Page 10 of 11

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

David Quan on behalf of David Jin-Mun Quan
Bar No. 16422300
dquan@davidquanlaw.com
Envelope ID: 96384021
Filing Code Description: Petition
Filing Description: Plaintiff's First Original Petition
Status as of 1/21/2025 8:16 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| David Quan | | dquan@davidquanlaw.com | 1/17/2025 11:56:03 PM | NOT SENT |

Certified Document Number: 118517992 - Page 11 of 11

25-20433.26

# TAB 7

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JOHN DIMECH,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.  4:25-cv-00252** |
| | § | |
| **SHELL TRADING (US) CO.,** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

**PLAINTIFF'S OBJECTIONS TO THE JULY 14, 2025**
**MEMORANDUM AND RECOMMENDATION**


Respectfully submitted,

LAW OFFICE OF DAVID J. QUAN

*/s/ David J. Quan*
David J. Quan
TX State Bar No. 16422300
Federal ID No. 20073
5444 Westheimer Rd., Suite 1700
Houston, TX 77056
dquan@davidquallaw.com

***Attorney-in-Charge for Plaintiff***
***John Dimech***

25-20433.144

## TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT ................. 1

II.    BACKGROUND ...................................................................................... 2

    A.    Context of the Dispute ................................................................. 2

    B.    The Commercial Bonus Program Process ................................... 3

    C.    Plaintiff's Lawsuit ..................................................................... 6

III.    PROCEDURAL HISTORY ..................................................................... 6

IV.    STANDARD OF REVIEW ................................................................... 10

V.    ARGUMENT ......................................................................................... 10

    A.    The Magistrate Judge's Consideration of Defendant's Reply Brief and Additional Declaration Filed Concurrently was Improper. ................................................................................... 10

    B.    The Forum Selection Clause Upon Which the Magistrate's Recommendation is Based Does Not Apply to Plaintiff's Claims. ....................................................................................... 13

        1.    The Analysis that Forms the Basis for the Recommendation Wrongfully Presumes the Validity of the Forum Selection Clause Offered by Defendant. ......... 13

        2.    The Memorandum and Recommendation Failed to Fully Analyze the Forum Selection Clause at Issue or Apply Proper Law. .................................................................. 16

            a.    The Use of Federal Common Law to Interpret the Forum Selection Clause was Improper. ................ 16

            b.    Under Either Texas or English Law, the Scope of the FSC in the Conditional Bonus Plan Rules Does Not encompass Plaintiff's claims in the present lawsuit. .................................................... 17

                i.    The Analysis Provided by Section 188 Dictates that Texas Law Be Used to Construct the Forum Selection Clause in Question ..............................................20

i

      ii.     Texas Law's Emphasis on Considering the Entire Agreement When Interpreting a Contract and Other Key Principles Results in the Present Dispute Not Being Covered by the FSC…………..………………..…………20

      iii.    The Application of English Contract Interpretation Law Likewise Limits the Scope of the FSC Such That Plaintiff's Claims Would Not be Subject to It…….........23

3.     The Memorandum and Recommendation's Inclusion of Several Inaccurate Facts Indicate Confusion about the Underlying Situation and Undermines the Reliability of Its Conclusion…………………………………………25

C.     The M&R Improperly Dismissed in Conclusory Fashion the Private Public Policy Factors that Must be Considered………..26

VI.     RELIEF REQUESTED ......................................................................... 26

25-20433.146

**Cases**

*Atlantic Marine Const. Co., Inc. v. U.S. District Court for*
*Western District of Texas,*
571 U.S. 49, 134 S.Ct. 568, 134 L. Ed. 2d 487 (2013) ......................... 14, 15, 16

*Barnett v. Dyncorp International, LLC,*
831 F.3d 296 (5th Cir. 2016) ....................................................................... 19

*Bexar County Hospital District v. Factory Mutual Insurance Co.,*
475 F.3d 274 (5th Cir. 2007) ....................................................................... 23

*Callier v. Jascot Enters., LLC,*
No. EP-22-cv-00301, 2024 WL 1494187 (W.D. Tex. April 5, 2024) ................. 12

*DeSantis v. Wackenhut Corp.,*
793 S.W.2d 670 (Tex. 1990) ........................................................................ 19

*Doe v. Facebook, Inc.,*
No. CV-H-22-0226, 2023 WL 3483891 (S.D. Tex. May 16, 2023) .............. 15, 17

*Fintech Fund v. Horne,*
836 Fed. App'x. 215 (5th Cir. 2020) ................................................. 16, 19, 21, 23

*Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.,*
99 F.4th 770 (5th Cir. 2024) ...................................................................... 11

*Gonzalez v. Mission American Insurance Co.,*
795 S.W.2d 734 (Tex. 1990) ....................................................................... 23

*In re Deepwater Horizon,*
824 F.3d 571 (5th Cir. 2016) ...................................................................... 11

*Jones v. Cain,*
600 F.3d 527 (5th Cir. 2010) ................................................................. 11, 12

*Klaxon Co. v. Stentor Electric Manufacturing Co.,*
313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941) ...................................... 18

*Maxus Exploration Co. v. Moran Bros., Inc.,*
817 S.W.2d 50 (Tex. 1991) .......................................................................... 19

*MCI Telecommunications Corp. v. Texas Utilities Electric Co.,*
995 S.W.2d 647 (Tex. 1999) .................................................................. 21, 22

*Robinson v. Brahma Group, Inc.,*
No. 4:23-CV-4290, 2024 WL 1962891 (S.D. Tex. May 3, 2024) ..................... 17

iii

25-20433.147

*Simmons v. T-Mobile USA,*
        No. H-06-1820, 2006 WL 3447684 (S.D. Tex. Nov. 22, 2006)......................... 11

*Springs Indus., Inc. v. Am. Motorists Ins.,*
        137 F.R.D. 238 (N.D. Tex. 1991)...................................................................... 12

*Weber v. PACT XP Technologies, AG,*
        811 F.3d 758 (5th Cir. 2016) ..................................................................... 15, 18

*Wellogix, Inc. v. SAP Am., Inc.,*
        58 F. Supp. 3d 766 (S.D. Tex. 2014) ............................................................... 17

**Other Authorities**

Restatement (Second) of Conflict of Laws §200 (Am. Law Inst. 1971)...................... 19

**Rules**

FED. R. CIV. P. 72(B)(3).............................................................................................. 10

**English Cases**

*Chartbook Ltd. v. Persimmon Home Ltd* [2009] UKHL 38........................................ 24

*Wood v. Capita Insurance Services Limited* [2017] UKSC 24.................................... 24

25-20433.148

I.    **INTRODUCTION AND SUMMARY OF THE ARGUMENT**

Plaintiff John Dimech initiated his state court claims for breach of contract, fraud, and fraudulent inducement in Texas district court. Through a series of procedural steps, his former employer, Defendant Shell Trading (US) Company, a U.S.-based company with headquarters in Houston, Texas, seeks to force Plaintiff to pursue his state-law based claims in a jurisdiction and pursuant to foreign law that has minimal if any connection to Mr. Dimech's U.S. employment with a domestic company based in Texas. Plaintiff files his Objections to preserve his rights arising from and affecting the terms of his employment relationship with STUSCO.

A summary of Plaintiff's arguments that the District Court should reject the Recommendation to grant the Motion to Dismiss for Forum Non Conveniens are:

(1) The Magistrate Judge improperly considered and relied upon arguments and evidence that Defendant introduced for the first time with its Reply brief filing. The timing of the introduction of this new material should not have been allowed as Plaintiff was not provided an opportunity to rebut Defendant's presentation.

(2) The Memorandum and Recommendation contains multiple errors in law, fact, and analysis:

    a.  The Memorandum and Recommendation did not follow established law in this Circuit that holds that federal common law is not to be applied in considering a motion pursuant to forum non conveniens.

    b.  The Magistrate Judge failed to conduct a required choice-of-law analysis, which if it had been done would have concluded that Texas law on contract interpretation should have been applied.

    c.  Whether under Texas or English law, which were the two possible laws that the choice-of-law analysis could have been properly applied, the scope of the forum selection clause would not be construed to be applicable to Plaintiff's claims under the Commercial Bonus Program.

1

25-20433.149

## I.    BACKGROUND

### A.    Context of the Dispute

It is undisputed that during all times relevant to the dispute in this matter, Plaintiff John Dimech worked in the United States as a U.S. person, was employed by a United States company (Defendant Shell Trading (U.S.) Company ("STUSCO")) that was operating within the jurisdiction of the United States and in accordance with his local employment contract, which was governed by U.S. employment law and within STUSCO's U.S. commercial trading employee-management framework.

Nevertheless, in this dispute regarding the determination of a significant portion of his U.S. earned compensation, Defendant is seeking to prevent him from pursuing his claims in a U.S. court and in the forum of his choice, which also happens to be Defendant's home forum.

To stifle Plaintiff's rights to pursue his claims arising from the terms of his employment, namely the determination of the majority of his compensation, and to hold STUSCO accountable to meet the obligations it promised and to which it had agreed, Defendant is claiming that rules that apply to STUSCO's *Conditional* Bonus Plan should control Plaintiff's ability to prosecute his rights to the unpaid portion of his bonus paid under the *Commercial* Bonus Program.

A full understanding of the nature and administration of these two different components of Plaintiff's compensation with STUSCO is central to why the Court must deny Defendant's Motion to Dismiss for Forum Non Conveniens and decline to follow the Magistrate Judge's Memorandum and Recommendation.

2

## B.    The Commercial Bonus Program Process

The commodity trading industry is a highly competitive field. Accordingly, as a company that seeks to remain a top-tier employer in the industry, Defendant STUSCO seeks to attract and retain the best talent. The Company's total compensation structure for the commercial traders serves an important role in helping STUSCO reach those objectives.

A key component of STUSCO's compensation structure for its commercial traders is the Commercial Bonus Program. This compensation component has been established to acknowledge and reward strong performance and compliance within the group, providing employees with compensation incentives for achieving high performance evaluation grades and contributing to strong revenue. This component can and often does exceed the commercial trader's base salary.

The timeline for determining this component of compensation provides insight on how it is the primary compensation component beyond salary:

- **<u>December</u>** -- at the conclusion of each calendar year there is an employee performance appraisal process which occurs in December.  All employees are evaluated and ranked in this process by their immediate supervisor(s). Plaintiff Dimech was responsible for ranking many employees in his capacity as a senior executive. He likewise was ranked in this process as an employee.

- **<u>January</u>** – throughout the month, the bonus amount pursuant to the Commercial Bonus Program is calculated for all commercial trading personnel, based on their performance, as part of their employment arrangement under

3

25-20433.151

local U.S. jurisdiction. These bonuses are not arbitrary but are instead correlated with performance using a centralized calculation model and a standard process.

- **End of January** – all commercial trading employees are advised of their Commercial Bonus Program award.

- **Mid-February** -- employees are paid the first $100,000.00 of their bonus and 60% of the remainder of their Commercial Bonus, beyond the first $100,000.00. These payments are immediately available to the employee.

- **April** – selected employees who received bonuses under the Commercial Bonus Program may elect whether to participate in the Conditional Bonus Plan with the amount remaining from the Commercial Bonus Program. Unlike the Commercial Bonus Program that is administered on a regional basis, the Conditional Bonus Plan is a global trading program that can be likened to the employee receiving equity in Shell's **global** trading business (as opposed to the broader Shell Group or the regional trading company of which they are an employee). It is a deferred compensation that can diminish to be worth nothing, double in value, or be forfeited or subject to clawback depending – or *conditioned* – upon certain factors, such as whether the individual remains employed by STUSCO, whether his or her separation is voluntary, whether the trader's interest or partial interest vests, and how Shell's global trading business performs during the subsequent three (3) year period. Given the conditional nature of this portion of compensation, the employee must accept

4

the rules of that global program to receive it. If an employee declines participating in the Conditional Bonus Plan, they do not partake in that program but would still have been advised of their total Commercial Bonus Program bonus and have received more than 60% of that amount.

- Anniversary Date of Participation in each of the subsequent 3 Years (approximately) – those who have agreed to participate in the Conditional Bonus Plan are advised of the increase or decrease in the amount of their funds in the Plan which is primarily affected by the performance of Shell Trading globally.

- Third Anniversary Date (approximately) – participants' funds in the Conditional Bonus Plan vest.

- September following Third Anniversary Date -- the Conditional Bonus Plan funds are distributed.

As the above breakdown of the Commercial Bonus Program chronology makes clear, the determination of the amount an individual receives as their Commercial Bonus does not arise from, relate to, connect with, or depend on the various rules that pertain to the deferred compensation that the individual may receive under the Conditional Bonus Plan. Furthermore, while the compensation paid under the Commercial Bonus Program is to recognize performance in the year prior, the Conditional Bonus Plan is an employment retention tool.[1]

---

[1] See Dkt. 4-1, p. 10, § 7.1.

5

25-20433.153

## C.     Plaintiff's Lawsuit

Plaintiff claims for Breach of Contract, Fraud, and Fraudulent Inducement are based on STUSCO's disputed calculation of the Commercial Bonus he was advised of at the end of January 2021 for his performance in 2020. Plaintiff's claims are all made regarding the compensation he received pursuant to Mr. Dimech's U.S. employment relationship with STUSCO. His lawsuit is ***not*** concerned with the administration of the Conditional Bonus Plan, which commences months after the Commercial Bonus amount was determined, announced, and a significant portion of which was immediately paid.

## II.     PROCEDURAL HISTORY

On January 17, 2025, Mr. Dimech filed his Original Petition, styled *John Dimech v. Shell Trading (US) Co.*, Cause No. 2025-03854, in the 269th Judicial District of Harris County, Texas. In his pleading, Mr. Dimech asserted claims for Breach of Contract, Fraud, and Fraudulent Inducement, all of which are state law claims. See Dkt. #1.

Despite the lack of federal question jurisdiction and the fact that STUSCO is based in Texas, thereby making it a forum state defendant, STUSCO removed this case to federal court on January 21, 2025, prior to being served. See Dkt. #1-2, para. 5.

Shortly thereafter, Defendant filed a Motion to Dismiss for *Forum Non Conveniens*. Dkt. #4. Despite the requirement to file a Joint Discovery/Case Management Plan per the district court's Order for an Initial Pretrial and Scheduling

6

Conference, Defendant has taken the position that it should not be subject to pre-trial discovery of any sorts – not even to make Initial Disclosures – until after its Motion to Dismiss is considered despite Plaintiff's desire to conduct discovery. See Dkt. #5.

STUSCO's motion to dismiss solely relied upon its contention that Plaintiff's claim that Defendant had failed to pay him the full amount of the compensation that he was due for his work and exemplary performance in 2020 was a claim regarding STUSCO's "***Conditional*** Bonus Plan."   See Dkt. 4, *seratim*. (emphasis added). Defendant specifically alleged "Dimech's only claims in this lawsuit relate exclusively to his bonus awarded under the [Conditional Bonus Award] Rules as memorialized in the 2020 CBA Certificate. Pet. at ¶ 21 (claiming his conditional bonus program should have been $29,400,000 more for fiscal year 2020)." See Dkt. 4 at p. 8-9.

However, Defendant had misconstrued and mischaracterized Plaintiff's pleadings. Plaintiff had specifically pleaded that he was seeking the full amount STUSCO owed him under the ***Commercial*** Bonus Program.  See Dkt. 1-3. Notably, Plaintiff, throughout his pleadings, clearly referenced that  the under-computation of his Commercial Bonus payment was the basis for his claims of breach of contract, fraud, and fraudulent inducement:

> 10.    Due to his lengthy tenure in the leadership of STUSCO, Dimech (a) helped to shape the formalization of, (b) calculated bonuses under, and (c) administered the Shell Trading ***Commercial*** Bonus Program ("CBP"). The CBP is a significant component of compensation for STUSCO's commercial employees. Dimech administered the CBP for

7

25-20433.155

groups with significant number of employees in North America (80 employees), as well as Singapore (18 employees) for 15 years.

…

30.    As described above, Defendant breached the terms of its agreement with Plaintiff by refusing to pay him the full CBP amount to which he was entitled.

…

33.    As described above, Defendant made misrepresentations to Plaintiff, including but not limited to, representations to Dimech that Defendants would pay under the CBP in the same manner and per the same criteria as it had in the past.

Dkt. 1-3, pp. 3, 7. (emphasis added).

There is not one mention of the Conditional Bonus Award or the Conditional Bonus Plan anywhere in Plaintiff's pleadings. The only component of Plaintiff's compensation referenced in Plaintiff's original petition is the amount he was paid per the ***Commercial*** Bonus Program. See Dkt 1-3.

Accordingly, Plaintiff responded to Defendant's motion to dismiss for forum non conveniens by pointing out that Defendant's entire basis for its motion was inapplicable to Plaintiff's claims, as STUSCO only made reference to the workings of its Conditional Bonus Plan, a compensation component that is determined, administered, and has a purpose that is very different from bonuses paid through the Commercial Bonus Program. Dkt. 7.

8

Apparently recognizing that its motion to dismiss had been directed solely at a purported basis of Plaintiff's lawsuit that did not exist, Defendant filed its Reply to Plaintiff's opposition and introduced a completely new basis for its request to have Plaintiff's lawsuit dismissed and sought to support its new position with evidence that it only submitted to the Court at the time STUSCO filed its reply. See Dkt 10 and 10-1. As Plaintiff had made clear that his lawsuit was based on calculation of his compensation paid under the Commercial Bonus Program – and not the Conditional Bonus Plan as STUSCO had claimed – STUSCO shifted gears in its Reply to contend for the first time not that Plaintiff was disputing any award he received as a Conditional Bonus Award, but instead that the Conditional Bonus Plan Rules should be extended, unilaterally and retrospectively, to govern disputes regarding the determination of the bonus amount determined under the Commercial Bonus Program.

Given the very early stage of this matter and Defendant's unwillingness to engage in any discovery or even provide disclosures, the Magistrate Judge had only the arguments of the Parties and unchallenged affidavits to consider, including those Defendant newly introduced in and with its Reply. Though improper to take into account, the Magistrate Judge apparently accepted as true STUSCO's newly submitted evidence, as well as its new bases for dismissal. In the Memorandum and Recommendation (sometimes referred to as the "M&R") issued on July 14, 2025 that concludes with a recommendation to grant STUSCO's motion, Defendant's Reply and the second declaration of Erin Verdun that was filed concurrently with the Reply are

9

cited multiple times in the Magistrate Judge's analysis to draw a connection between the Conditional Bonus Plan and the Commercial Bonus Program. See Dkt. 11, p. 2 and 5.

## III. STANDARD OF REVIEW

"The district judge may determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). As the period by which Plaintiff may serve and file his objections has been extended, Dkt. 13, Plaintiff's objections are proper. Accordingly, a de novo standard is to be applied by the district court in reviewing the Memorandum and Recommendation.

## IV. ARGUMENT

### A. The Magistrate Judge's Consideration of Defendant's Reply Brief and Additional Declaration Filed Concurrently was Improper.

Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss asserted new arguments and evidence as the bases for the relief requested by STUSCO. Courts are not to consider arguments and evidence that are asserted for the first time in a movant's reply brief, as it prejudices the non-movant. Thus, the Magistrate Judge should have disregarded both STUSCO's reply and its concurrently filed additional declaration.

A court's consideration of new arguments and evidence first submitted in a movant's reply brief violates settled case law. "Arguments 'raised for the first time in a reply brief are generally waived,' as the responding party is deprived of the opportunity to respond to the new argument." *Jones v. Cain*, 600 F.3d 527, 541 (5th

10

25-20433.158

Cir. 2010); *In re Deepwater Horizon,* 824 F.3d 571, 585 n.8 (5th Cir. 2016) (holding an argument raised only in reply "is not properly before the court"). Moreover, a court can decline to consider new evidence in a reply brief. *Simmons v. T-Mobile USA*, No. H-06-1820, 2006 WL 3447684, at *1 (S.D. Tex. Nov. 22, 2006); *see Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.,* 99 F.4th 770, 774 (5th Cir. 2024).

Here, Defendant improperly proffered new evidence and arguments outside of being responsive to Plaintiff's response. Plaintiff's response to Defendant's motion to dismiss rejected STUSCO's erroneous argument that his claims were being made with regard to STUSCO's Conditional Bonus Plan, Dkt. 7, at. 2, 7, and clarifies that the claims he asserts arise from his bonus amount determined under the *Commercial* Bonus Program. Dkt. 7, at 5-6. In fact, the Commercial Bonus Program was the only contract that Plaintiff identified had been breached in his pleadings; the term "Conditional Bonus" is not used anywhere in his state court petition. *See* Dkt. 1-3.

Faced with Plaintiff's clarification that he had not stated claims based on the Conditional Bonus Plan, Defendant was forced to assert a new argument in its reply to contend that the scope of the Conditional Bonus Plan's rules should also encompass the Commercial Bonus Program. This is a new argument that is not properly raised in a reply brief. *See Cain*, 600 F.3d 527 at 541.

Furthermore, STUSCO compounds the impropriety of its reply by concurrently filing a second declaration, which is new evidence, to self-servingly support its new arguments. *See Callier v. Jascot Enters., LLC*, No. EP-22-cv-00301, 2024 WL

11

1494187, at *5 (W.D. Tex. April 5, 2024). "[A] reply brief that presents dispositive evidence by way of **new affidavits and exhibits** deprives the nonmovant of a meaningful opportunity to respond." *Springs Indus., Inc. v. Am. Motorists Ins.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) (emphasis added).

The new evidence that Defendant introduced with its reply was a declaration from Erin Verdun, who had already provided a declaration that Defendant had used to support its Motion. Ms. Verdun's second declaration is highly dispositive as it (1) depicts the supposed scope of the Conditional Bonus Plan and how it affects Plaintiff's bonus compensation, and (2) downplays the scope of the Commercial Bonus Program, the actual contract that has been breached as alleged in Plaintiff's petition. See Dkt. 10-1.[2]

Furthermore, Ms. Verdun's second declaration proffers new evidence regarding the public and private interest factor analysis. Without any opportunity to be challenged, Defendant, through Ms. Verdun's second declaration, introduces new evidence on the potential witnesses Plaintiff has identified by stating their purported relationship with Defendant. See Dkt. 10-1, para. 7.  At the least, assertions in a self-serving declaration offered by the movant of a dispositive motion should not be accepted as a valid basis for any decision.

As Plaintiff was not provided with the opportunity to rebut the new argument and evidence asserted in and with Defendant's reply brief, the Magistrate Judge's

---

[2] Although Defendant attempts to justify that the arguments in its reply and the evidence submitted with are not new, it does so only in with conclusory assertions. STUSCO provides no explanation as to how these materials are not new. Moreover, Defendant relies upon non-binding authority from a district court that is outside of the Fifth Circuit to attempt to buttress its unsupported contention.

12

25-20433.160

consideration of STUSCO's arguments made in its reply brief and Ms. Verdun's second declaration should have been disregarded by the Magistrate Judge. As the consideration of Defendant's reply brief was improper, the Court should decline the Recommendation of the Magistrate Judge and deny Defendant's motion as it failed to provide a valid basis for dismissal since it solely relied upon its erroneous contention that Plaintiff's claims were based on the Conditional Bonus Plan – a Plan that was not ever referenced in Plaintiff's pleadings.

**B.    The Forum Selection Clause Upon Which the Magistrate's Recommendation is Based Does Not Apply to Plaintiff's Claims.**

In addition to the Magistrate Judge improperly considering Defendant's newly introduced arguments and new evidence, the Memorandum and Recommendation is based upon mistakes about the facts, erroneous analysis, and non-compliance with established law. As a result, the Memorandum and Recommendation's recommendation that Defendant's Motion should be granted is wrong and the District Court should reject it.

**1.    <u>The Analysis that Forms the Basis for the Recommendation Wrongfully Presumes the Validity of the Forum Selection Clause Offered by Defendant.</u>**

The Magistrate Judge disregarded a critical threshold determination in its analysis of whether this matter should be maintained in the Southern District of Texas. Thus, in skipping this step, the Magistrate Judge applied a framework that made it significantly more likely that Defendant's contention that the forum selection clause ("FSC") from the Conditional Bonus Plan Rules would be found to govern.

13

In determining whether a court should retain jurisdiction over a matter when a party is requesting that the case be moved to another forum, the analysis to be applied shifts greatly when the parties' contract contains a valid forum-selection clause. *Atlantic Marine Const. Co., Inc. v. U.S. District Court for Western District of Texas*, 571 U.S. 49, 63, 134 S.Ct. 568, 581, 134 L. Ed. 2d 487 (2013). For example, when there is no valid forum selection clause, a plaintiff is usually allowed to choose the most advantageous forum. *Id*. However, the "plaintiff's venue privilege" is almost completely nullified if a valid forum selection clause exists because the plaintiff is considered to have effectively exercised this privilege. *Id*. The Supreme Court justified the validity of the plaintiff's loss of the venue privilege, explaining that:

> …when a plaintiff agrees by contract to bring suit only in a specified forum – presumably in exchange for other binding promises by the defendant – the plaintiff has effectively exercised its "venue privilege" before a dispute arises.

*Id*.

When the parties' contract contains a valid forum selection clause, courts also apply a different type of analysis to determine whether it should forego jurisdiction in favor of another forum. *Doe v. Facebook, Inc.*, No. CV-H-22-0226, 2023 WL 3483891, at *3 (S.D. Tex. May 16, 2023). When there is no forum selection clause, the trial court must evaluate both the convenience of the parties and certain public-interest considerations. *Atlantic Marine*, 571 U.S. at 63, 134 S.Ct. at 581-82; *Weber v. PACT XP Technologies, AG*, 811 F.3d758, 768 (5th Cir. 2016); *Doe*, at *3. But when a valid forum selection clause has been agreed to by the parties, a multi-step analysis is to be applied regarding whether the clause is "mandatory" or "permissive." *Id*.

14

In the Memorandum and Recommendation, the Magistrate Judge applies this latter, more stringent multi-step analysis to validate its conclusion of its applicability to Plaintiff's claims. See Dkt 11, p. 4-5 ("As discussed above, the Court must first determine whether the forum selection clause is mandatory versus permissive, and then whether the clause is valid and encompasses the claims in this case."). To get to this analysis, the Magistrate Judge would have already had to presume that the forum selection clause from the Conditional Bonus Award Rules represents the existence of a "valid forum selection clause" and that it covered Plaintiff's claims in this lawsuit. See *Atlantic Marine*, 571 U.S. at 62, 134 S.Ct. at 581, n. 5 ("Our analysis presupposes a contractually valid forum-selection clause."),[3] see also *Fintech Fund v. Horne*, 836 Fed. App'x. 215, 222 (5th Cir. 2020) ("Importantly, this analysis ***presupposes*** that the forum-selection clause is ***valid*** and that ***the relevant dispute falls within its scope***." (emphasis added)).

Thus, the Magistrate Judge presumed the validity of the clause in the Conditional Bonus Program Rules in order to use an analytical framework to then re-validate it.

Furthermore, as is evident from the Supreme Court's description of why the analysis changes when a valid forum selection clause is in place, the Court presumed in that situation that the parties had freely agreed to the forum selection clause regarding the contract at issue in exchange for other concessions. By contrast, in this matter, STUSCO has not come forward with a provision involving forum selection

---

[3] The Supreme Court has not provided direction on what constitutes a "valid" forum selection clause.

15

25-20433.163

that is within the ***Commercial*** Bonus Program, the component of compensation on which Plaintiff is basing his claims.

2. <u>**The Memorandum and Recommendation Failed to Fully Analyze the Forum Selection Clause at Issue or Apply Proper Law**</u>.

Having prematurely skipped forward to conduct an analysis of the factors to be applied when the parties have entered into a valid forum selection clause, the Magistrate Judge additionally did not conduct a thorough analysis of the clause. A full analysis of the clause applying the proper rules of contract interpretation would have resulted in a determination that the FSC  from the Conditional Bonus Plan Rules does ***<u>not</u>*** cover Mr. Dimech's claims regarding the calculation of his compensation under the Commercial Bonus Program for 2020 as such an interpretation contradicts specific provisions of the proffered document containing the FSC and such document does not call for the expansive reading of the FSC that the Magistrate Judge.

a. <u>The Use of Federal Common Law to Interpret the Forum Selection Clause was Improper</u>.

In the M&R, the Magistrate Judge noted that while "[f]ederal law governs the enforceability of a forum selection clause, [ ] state law governs its interpretation." Dkt. 11, p. 3 citing *Doe*, <u>2023 WL 3483891</u> at \*3 and *Robinson v. Brahma Group, Inc.*, No. 4:23-CV-4290, <u>2024 WL 1962891</u>, at \*3 (S.D. Tex. May 3, 2024).

Despite this accurate statement about which law should be applied in constructing the meaning of the FSC, the M&R only cites and follows federal common law in its analysis of the nature and scope of the forum selection clause. In its analysis

16

25-20433.164

of the applicable scope of the forum selection clause, the M&R only cites one federal district court case, *Wellogix, Inc. v. SAP Am., Inc.*, 58 F. Supp. 3d 766 (S.D. Tex. 2014) for the directive for the court to "look[] to the language of the contract" when determining the FSC's scope. See Dkt. 11, p. 5-6.

Moreover, the *Wellogix* district court opinion and its reliance on federal law to determine the scope of a forum-selection clause pre-dates the Fifth Circuit's clear holding to the contrary that a district court is "bound" to engage in a choice-of-law analysis… to determine what substantive law should guide this court's interpretation of the FSC." *Weber v. PACT XPP Technologies, AG*, 811 F.3d 758, 770 (5th Cir. 2016). This is particularly true when a federal court's jurisdiction arises under diversity standards. *Id.*

The M&R's improper reliance solely on federal common law to guide the Magistrate Judge's interpretation of the FSC from the Conditional Bonus Plan Rules undermines the authority of the M&R. Given the Memorandum and Recommendation's flawed foundation, its conclusion should not be followed.

      b. <u>Under Either Texas or English Law, the Scope of the FSC in the Conditional Bonus Plan Rules Does Not encompass Plaintiff's claims in the present lawsuit.</u>

Rather than turning to federal case law for its authority to interpret the scope and applicability of the Conditional Bonus Plan Rules' FSC, the Magistrate Judge should have engaged in a choice-of-law analysis to determine which law should apply. Under either set of laws that could be applicable, the result is that the scope of

25-20433.165

Defendant's proffered forum selection clause does not encompass the dispute involved in this litigation.

As STUSCO removed this matter to federal court on the basis of diversity jurisdiction, the law of the forum state determines what law should be followed in constructing the contractual rights of the parties. *Weber v. PACT XPP Technologies, AG*, 811 F.3d 758, 770 (5th Cir. 2016) citing *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496-97, 61 S. Ct. 1020, 1022, 85 L. Ed. 1477 (1941). Thus, in this matter, Texas law provides the choice-of-law standards to be applied.

Texas courts look to the Restatement (Second) of Conflict of Laws to decide which state's law should govern the construction of contractual rights. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677-78 (Tex. 1990), cert. denied 498 U.S. 1048, 111 Sc. T. 755, 112 L.Ed. 2d 775 (1991); *Maxus Exploration Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 53 (Tex. 1991); see also *Fintech Fund*, 836 Fed. App'x at 223-24; *Barnett v. Dyncorp International, LLC*, 831 F.3d 296, 304-05 (5th Cir. 2016). "The Restatement provides that '[t]he validity of a contract ... is determined by the law selected by application of the rules of §§ 187 [(Law of the State Chosen by the Parties)]-188 [(Law Governing in Absence of Effective Choice by the Parties)].'" *Fintech Fund*, 836 Fed. App'x at 223 quoting Restatement (Second) of Conflict of Laws §200 (Am. Law Inst. 1971) (hereafter "Restatement"). *Fintech Fund*, 836 Fed. App'x at 223.

Section 187 of the Restatement is directed toward the situation where the parties to the contract have clearly agreed to what law is to govern their agreement and provides, in relevant part, that:

18

25-20433.166

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

  (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
  (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

When there is no valid forum selection clause, Section 188 of the Restatement is to apply, and in relevant part, it provides :

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

  (a) the place of contracting,
  (b) the place of negotiation of the contract,
  (c) the place of performance,
  (d) the location of the subject matter of the contract, and
  (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

  These contacts are to be evaluated according to their relative importance with respect to the particular issue.

19

25-20433.167

As there is no evidence that Mr. Dimech and STUSCO agreed that the Commercial Bonus Program, or any other term of their employment relationship, was to be governed by a particular set of laws, the Magistrate Judge should have conducted a choice of law analysis pursuant to Section 188 of the Restatement.

      i.    <u>The Analysis Provided by Section 188 Dictates that Texas Law Be Used to Construct the Forum Selection Clause in Question</u>.

Section 188 of the Restatement focuses on the forum with the greatest relevant contacts to the dispute in question. As the present lawsuit involves Plaintiff's contention that his employer, STUSCO, failed to comply with the agreed terms of their employment relationship, namely, on how one of the most significant components of his compensation had been calculated. As previously noted, Defendant is an American corporation with its main headquarters in Houston, Texas, and at all times relevant to the dispute in this lawsuit, Mr. Dimech was a U.S. person, as he was domiciled, residing, and working in Houston. Furthermore, Texas was where Plaintiff performed the work to earn the compensation that he claims that he is due and where Defendant paid Mr. Dimech for the performance of his services.

Accordingly, the Magistrate Judge should have followed the rules of contract construction from Texas law when determining the parties' rights under the FSC.

      ii.    <u>Texas Law's Emphasis on Considering the Entire Agreement When Interpreting a Contract and Other Key Principles Results in the Present Dispute Not Being Covered by the FSC.</u>

A key rule of contract interpretation followed by Texas courts that federal courts have applied in the context of interpreting the scope and nature of forum selection clauses is the need to "examine the entire agreement in an effort to

20

harmonize and give effect to all provisions of the contract so that none will be meaningless." *Fintech Fund*, 327 F. Supp. 3d at 1025 citing *MCI Telecommunications Corp. v. Texas Utilities Electric Co.*, 995 S.W.2d 647, 652 (Tex. 1999).

The Memorandum and Recommendation does not consider any part of the Conditional Bonus Plan Rules – the purported agreement that Defendant contends includes an FSC – other than the one provision that Defendant cited in its motion, namely, the section titled "Governing law and jurisdiction." However, focusing on only part of the 12-page document proffered by Defendant is contrary to the Texas contract interpretation law mandate to "examine the entire agreement."

A proper and complete review of the document Conditional Bonus Plan Rules demonstrates that it contains a provision that explicitly disavows any application or effect on the other rights and obligations arising from the employment relationship of an individual who receives a Conditional Bonus Plan Award and his or her Shell entity employer. In the section of the Rules titled "Relationship with terms of a Participant's employment," the document states:

> (c) Nothing in the Rules or in the terms of or the practice of granting Awards forms part of an Employee's contract of employment. The rights and obligations arising from the employment relationship between the Employee and any Member of the Group are separate from, and are not affected by, these Rules or any Awards made. The grant of an Award does not create any right to, or expectation of, the grant of an Award on the same basis, or at all, in the future.

Dkt. 4-1, p. 13, §11(c). This provision makes clear that the agreement that contains the forum selection clause that is the basis for the Magistrate Judge's Recommendation does not and cannot affect other employment terms of those who receive a payment under the Conditional Bonus Plan. In other words, the agreement

25-20433.169

limits the scope of its own application to only apply in the context of the Conditional Bonus Plan.

Applying this provision to the current lawsuit, the Conditional Bonus Plan Rules clearly state that they are to affect the rights and obligations arising from Mr. Dimech's employment relationship and Defendant STUSCO. Included in such rights is Mr. Dimech's ability to pursue his claims to enforce STUSCO's obligations to compensate him as agreed and as Defendant had represented it would. To interpret all provisions of the agreement in a way that would subject Mr. Dimech to the FSC contained in the Conditional Bonus Plan Rules would render the provision in 11(c) meaningless. Such a result is inconsistent with Texas law on contract interpretation. See *MCI Telecommunications Corp.*, 995 S.W.2d at 652.

Even if 11(c)'s provision of the Rules limited application was construed as having created an ambiguity or inconsistency with the wording of the forum selection clause, Texas law would still interpret the agreement as having no application over the dispute in this lawsuit. Texas contract interpretation law mandates the construing of any ambiguities or inconsistent provisions in a contract "strictly against the party that drafted it." *Fintech Fund*, 327 F. Supp. 3d at 1025-26 citing *Bexar County Hospital District v. Factory Mutual Insurance Co.*, 475 F.3d 274, 277 (5th Cir. 2007) (citing *Gonzalez v. Mission American Insurance Co.*, 795 S.W.2d 734, 737 (Tex. 1990).

As STUSCO was the sole drafter of the Rules that it asserts apply, the inconsistency it created with the FSC and 11(c) would need to be strictly construed

22

25-20433.170

against Defendant. Thus, the limited effect provided by 11(c) would be given full effect and prevent the FSC's application to Mr. Dimech's claims regarding his compensation under the Commercial Bonus Program.

> iii. The Application of English Contract Interpretation Law Likewise Limits the Scope of the FSC Such That Plaintiff's Claims Would Not be Subject to It.

As discussed above, Plaintiff strongly contends that Section 188 of the Restatement applies under Texas' choice-of-law regimen since no valid choice of law provision exists regarding Plaintiff's claims under the Commercial Bonus Program. Accordingly, Texas law should govern the interpretation of the forum selection clause's scope and nature. Under Texas contract interpretation law, the only way to give meaning to all of the agreement's provisions is to determine that the limited scope provision of 11(c) prevents the forum selection clause from extending in application to impede Plaintiff's rights arising from his employment relationship with STUSCO.

However, the District Court may believe that the same forum selection clause which is to be interpreted for its applicability to the present claims also serves as a choice of law agreement between the parties in determining what law should be applied to interpret the FSC. It might also determine that despite the limitations set forth in Section 187 of the Restatement, English law is to govern such contract interpretation. Though Plaintiff believes that such conclusion is wrong and opposes such position, the potential result of such a choice-of-law analysis that English law should be used in interpreting the scope and nature of the forum selection clause still

23

concludes with the same result – the forum selection clause should be construed to not cover Plaintiff's employment terms under the Commercial Bonus Program.

The starting point under English law to contractual interpretation is to identify the intention of the contracting parties by reference to "what a reasonable person having all the background knowledge which would have been available to the parties would have understood them to be using the language in the contract to mean." *Chartbook Ltd. v. Persimmon Home Ltd* [2009] UKHL 38, para. 14 (Lord Hoffman). This is an objective test. *Id*. In ascertaining the objective meaning of a contractual provision, the courts are not engaged in a literalist exercise focused solely on parsing the words of the particular clause. Instead,

> the court must consider the contract as a whole and, depending on the nature, formality and quality of drafting of the contract, give more or less weight to elements of the wider context in reaching its view as to [its] objective meaning.

*Wood v. Capita Insurance Services Limited* [2017] UKSC 24.

As English law, like Texas law, gives consideration to the context of the entire agreement, an analysis under this approach would require a full reading of STUSCO's Conditional Bonus Plan Rules, particularly provision 11(c). That provision of the agreement specifically states that nothing within the Rules/agreement or the receiving of an Award under the Conditional Bonus Plan affects the rights and obligations arising from the employment relationship between the individual who receives such award and their employer. See Dkt. 4-1, p. 13, §11(c).

Taking this "limited affect" provision into account, provides a context for the interpretation of the forum selection clause that it was likewise to have limited

24

application to the specific terms of the Conditional Bonus Plan and no other aspect of the employment relationship of a participant and his or her employer.

Thus, applying English law principles of contractual interpretation to construe the FSC also produces the same outcome as under Texas law, which is that the forum selection clause does not apply to claims such as Mr. Dimech's that involve other rights and obligations arising out of his employment relationship with STUSCO.

        3.    <u>The Memorandum and Recommendation's Inclusion of Several Inaccurate Facts Indicate Confusion about the Underlying Situation and Undermines the Reliability of Its Conclusion.</u>

In addition to not following the established law of this Circuit and not conducting a thorough analysis to construe the meaning of the FSC found in the Conditional Bonus Plan Rules, the Memorandum and Recommendation contains clear factual errors about the distinctions between the Commercial Bonus Program and the Conditional Bonus Plan that are at the heart of this matter. Such errors indicate the unreliability of the M&R's conclusion.

The first example of the M&R's confusion of these two critically distinctive compensation components for commercial trade employees is found in the document's opening paragraph. After noting that the "CBP" will refer to the "Commercial Bonus Program," in the very next sentence of the M&R, the Memorandum states that Defendant's Motion is "based on a forum selection clause in the CBP Agreement." However, as has been clear throughout the briefing in this matter, no written Commercial Bonus Program Agreement was ever introduced by either, much less one that contains a forum selection clause. Thus, the M&R demonstrates a mistaken

25

interchanging of the *Commercial* Bonus Program for the *Conditional* Bonus Plan from the outset of the M&R. Dkt. 11, p. 1.

Likewise, the M&R's acceptance of the forum selection clause's application is supported by the FSC's use of the term "any Award," thus, per the reasoning of the M&R, the Commercial Bonus Program Award was encompassed. Dkt. 11, p. 6. However, the term "Award" was defined in the Conditional Bonus Plan Rules as "any award made under these Rules." Dkt. 4-1, p. 7.

These interchanging of terms in the M&R reflect a pre-conception of the interrelationship of these distinct compensation components that makes

### C. The M&R Improperly Dismissed in Conclusory Fashion the Private Public Policy Factors that Must be Considered

Finally, the Magistrate Judge did not give proper weigh to the private public policy factors that should have received full consideration. Initially, the M&R fails to acknowledge the impediment that the change of forum will make on the availability of witnesses. Additionally, the M&R failed to consider Plaintiff's status as a U.S. Person and his lengthy employment tenure during which he resided in this country and operated under a US employment contract and US employment framework.

## V. RELIEF REQUESTED

Therefore, based on the argument and evidence discussed above, Plaintiff respectfully requests that the Court issue an Order Rejecting the Memorandum and Recommendation Issued on July 14, 2025 and Denying Defendant's Motion to Dismiss for Forum Non Conveniens. Plaintiff further requests all other relief to which he is entitled.

25-20433.174

27

25-20433.175

Respectfully submitted,

LAW OFFICE OF DAVID J. QUAN

*/s/ David J. Quan*

David J. Quan
TX State Bar No. 16422300
Federal ID No. 20073
5444 Westheimer Rd., Suite 1700
Houston, TX 77056
dquan@davidquallaw.com

***Attorney-in-Charge for Plaintiff***
***John Dimech***

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of August 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record who are registered in this matter.

*/s/ David J. Quan*

28

25-20433.176

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **JOHN DIMECH,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | CIVIL ACTION NO.  4:25-cv-00252 |
| | § | |
| **SHELL TRADING (US) CO.,** | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

Pending before the Court are Plaintiff's Objections to the Memorandum and Recommendation Issued on July 14, 2025 by the Magistrate Judge .  The Court, having considered Plaintiff's Objections and any responsive filings and/or arguments, is of the opinion that the Memorandum and Recommendation Issued on July 14, 2025 should be **REJECTED.**

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss for Forum Non Conveniens should be **DENIED**.

ACCORDINGLY, this matter will continue to proceed in the United States District Court for the Southern District of Texas. The Parties are instructed to proceed forward with pre-trial discovery in this matter.

It is so ORDERED.

SIGNED on this ___day of _____, 2025.

_____
UNITED STATES DISTRICT JUDGE

1

25-20433.177

# TAB 8

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument was forwarded to all counsel of record by electronic filing in accordance with the Federal Rules of Appellate Procedure on May 15, 2026.

Shauna Johnson Clark
shauna.clark@nortonrosefulbright.com
Heather Sherrod
heather.sherrod@nortonrosefulbright.com
Warren Huang
warren.huang@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
1550 Lamar St., Suite 2000
Houston, TX 77010


  */s/ David J. Quan*
David J. Quan