NO. 25-20433

# In the United States Court of Appeals for the Fifth Circuit

**John Dimech,**
*Appellant-Plaintiff.*

**v.**

**Shell Trading U.S. Company**,
*Appellee-Defendant.*

On Appeal From Civil Action No. 4:25-cv-252, In the United States District Court
for the Southern District of Texas, Houston Division
Honorable Sim Lake, Presiding Judge

## APPELLEE'S RESPONSE BRIEF ON THE MERITS

Shauna Johnson Clark
Texas Bar No. 00790977
shauna.clark@nortonrosefulbright.com
Warren S. Huang
Texas Bar No. 00796788
warren.huang@nortonrosefubright.com
Heather Sherrod
Texas Bar No. 24083836
heather.sherrod@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
1550 Lamar, Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

*Counsel for Appellee Shell Trading U.S. Company*

NO. 25-20433

# In the United States Court of Appeals for the Fifth Circuit

**John Dimech,**
*Appellant-Plaintiff.*

**v.**

**Shell Trading U.S. Company**,
*Appellee-Defendant.*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal:

- Appellant-Plaintiff is John Dimech.

- Counsel for John Dimech is David J. Quan of Law Office of David J. Quan.

- Appellee-Defendant is Shell Trading U.S. Company.

- Shell Trading North America Company is the parent corporation of Shell Trading U.S. Company.

i

- Counsel for Shell Trading U.S. Company are Shauna Johnson Clark, Heather Sherrod, and Warren S. Huang of Norton Rose Fulbright US LLP.

*/s/ Warren S. Huang*

Warren S. Huang

*Attorney for Appellee*

Date: July 17, 2026

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Shell Trading U.S. Company respectfully submits that oral argument is not necessary because this appeal may be resolved based on the straightforward application of well-established law to the undisputed facts of this case.  If, however, the Court grants oral argument, Appellee reserves the right to participate.

**TABLE OF CONTENTS**

**PAGE**

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

STATEMENT REGARDING ORAL ARGUMENT ............................................... iii

TABLE OF CONTENTS ........................................................................... iv

TABLE OF AUTHORITIES .......................................................................... vii

STATEMENT OF JURISDICTION ..................................................................... 1

ISSUE PRESENTED ................................................................................... 2

STATEMENT OF FACTS ............................................................................... 2

    I.       Mr. Dimech Files Suit Against STUSCO Challenging the Adequacy of the $8,170,000 Bonus That STUSCO Awarded Him in 2020 .............................................................................. 2

    II.     STUSCO Moves to Dismiss Mr. Dimech's Claims for Forum Non Conveniens Based on a Mandatory Forum Selection Clause Requiring Disputes Arising Under or In Connection With Mr. Dimech's Bonus Award to Be Brought in an English Court .............. 4

    III.    The Magistrate Judge Issues Its Memorandum and Recommendation That STUSCO's Motion to Dismiss for Forum Non Conveniens Be Granted and Mr. Dimech's Claims Be Dismissed Without Prejudice, and the District Court Adopts the Memorandum and Recommendation .................................................. 9

SUMMARY OF ARGUMENT ........................................................................ 11

ARGUMENT .......................................................................................... 13

    I.       Standard of Review ......................................................................... 13

    II.     The District Court Did Not Err in Granting STUSCO's Motion to Dismiss for Forum Non Conveniens Based on the Mandatory Forum Selection Clause ................................................. 13

A. Motions to Dismiss for Forum Non Conveniens Should Be Granted in "All But the Most Exceptional Cases" When a Mandatory Forum Selection Clause Exists ............................ 13

B. The Forum Selection Clause Is Mandatory ........................... 16

C. The Forum Selection Clause Is Enforceable .......................... 19

D. The Forum Selection Clause Applies to Mr. Dimech's Claims ...................................................................................... 21

    1. Mr. Dimech's Claims Fall Squarely Within the Scope of the Forum Selection Clause Because They Directly and Necessarily Challenge the Amount of His ConditionalBP Award and the Manner in Which It Was Calculated ............................................... 21

    2. Mr. Dimech's Arguments Against the Applicability of the Forum Selection Clause to His Claims Should Be Summarily Rejected ................................................. 25

        a. The District Court Did Not Improperly Rely on Arguments and Evidence in STUSCO's Reply in Support of Its Motion to Dismiss ........ 25

        b. The District Court Did Not Erroneously Interpret the Forum Selection Clause in Isolation From Other Provisions of the ConditionalBP Rules ........................................... 30

        c. It Is Immaterial Whether the District Court Conducted a Choice-of-Law Analysis in Determining the Governing Law for Interpreting the Forum Selection Clause ............ 32

        d. Any Alleged Errors in the District Court's Opinion Do Not Support Reversal of the Final Judgment ................................................... 35

E. The Public Interest Factors Strongly Support Dismissal for Forum Non Conveniens ......................................................... 37

CONCLUSION ................................................................................................... 42

CERTIFICATE OF SERVICE ............................................................................ 44

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS ................................................................................. 45

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Adams v. Merck & Co.*,
   353 F. App'x 960 (5th Cir. 2009).............................................................. 23

*Al Copeland Invs., L.L.C. v. First Specialty Ins. Co.*,
   884 F.3d 540 (5th Cir. 2018)....................................................... 38, 39, 42

*Argyll Equities LLC v. Paolino*,
   211 F. App'x 317 (5th Cir. 2006)............................................................. 18

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
   571 U.S. 49 (2013) ..............................................................................*Passim*

*Barnett v. DynCorp Int'l, L.L.C.*,
   831 F.3d 300 (5th Cir. 2016)................................................................*Passim*

*Benamou v. Wells Fargo Bank Nat'l Ass'n for Carrington Mortg.*
   *Loan Tr., Series 2007-FRE1, Asset-Backed Pass-Through*
   *Certificates*,
   711 F. App'x 241 (5th Cir. 2018).......................................................*Passim*

*Cognizant Trizetto Software Group, Inc. v. Infosys Ltd.*,
   No. 3:24-CV-21587-X, 2026 WL 1630219
   (N.D. Tex. Mar. 27, 2026)........................................................................ 26

*FCX Solar, LLC v. FTC Solar, Inc.*,
   No. 6:21-CV-548-ADA, 2021 WL 4953912
   (W.D. Tex. Oct. 25, 2021)........................................................................ 18

*Fintech Fund, F.L.P. v. Horne*,
   836 Fed. App'x 215 (5th Cir. 2020).....................................................*Passim*

*Fiona Trust & Holding Corp. v. Privalov*,
   [2007] EWCA (Civ) 20 .......................................................................... 35

*Fleny v. Johnson*,
   243 F.3d 215 (5th Cir. 2001)...............................................................*Passim*

*Ga. Firefighters' Pension Fund v. Anadarko Petr. Corp.*,
99 F.4th 770 (5th Cir. 2024) ............................................................. 29

*Goodly v. Check 6, Inc.*,
No. CV-16-1936, 2016 WL 3090293
(E.D. La. June 2, 2016) ....................................................................... 40

*Heaven Media Ltd. v. Everts*,
No. A-22-CV-00025-LY, 2022 WL 18585892
(W.D. Tex. May 10, 2022) ........................................................ 25, 39, 41

*Hebert v. Marathon Oil Co.*,
No. 3:19-CV-109, 2020 WL 1429480
(S.D. Tex. Mar. 19, 2020) ................................................................... 40

*In re Deepwater Horizon*,
824 F.3d 571 (5th Cir. 2016) ............................................................. 28

*Jones v. Cain*,
600 F.3d 527 (5th Cir. 2010) ............................................................. 28

*Lynch v. Union Pac. R.R. Co.*,
No. 3:13-CV-2701-L, 2015 WL 6807716
(N.D. Tex. Nov. 6, 2015) ............................................................. 26, 27

*Matheson Tri-Gas, Inc. v. FlexTM, Inc.*,
No. 4:18-CV-0248, 2018 WL 2363958
(S.D. Tex. May 24, 2018) ................................................................... 18

*Matthews v. Tidewater Crewing, Ltd.*,
658 F. Supp. 3d 332 (E.D. La. 2023), *aff'd*,
108 F.4th 361 (5th Cir. 2024) ........................................................... 42

*MCI Telecommuns. Corp. v. Tex. Utils. Elec. Co.*,
995 S.W.2d 647 (Tex. 1999) ............................................................. 34

*McIntosh v. Partridge*,
540 F.3d 315 (5th Cir. 2008) ............................................................. 10

*Pinto Tech. Ventures, L.P. v. Sheldon*,
526 S.W.3d 428 (Tex. 2017) ............................................................. 24

*RKR Techs., Ltd. v. Recaro Aircraft Seating Am.*,
815 F. Supp. 3d 500 (N.D. Tex. 2025) ........................................ 41

*Shambaugh & Son, L.P. v. Steadfast Ins. Co.*,
91 F.4th 364 (5th Cir. 2024) ................................................ 10, 38

*Simmons v. T-Mobile USA*,
No. H-06-1820, 2006 WL 3447684
(S.D. Tex. Nov. 22, 2006) .................................................... 28, 29

*Springs Indus., Inc. v. Am. Motorists Ins. Co.*,
137 F.R.D. 238 (N.D. Tex. 1991) ............................................... 29

*Tex. Brine Co., L.L.C. v. Am. Arb. Ass'n Inc.*,
955 F.3d 482 (5th Cir. 2020) .................................................... 1

*Trinity Indus., Inc. v. Martin*,
963 F.2d 795 (5th Cir. 1992) .................................................. 10

*UBS AG v. HSH Nordbank AG*,
[2009] EWCA (Civ) 585 ...................................................... 25

*United States v. Ballard*,
779 F.2d 287 (5th Cir. 1986) .................................................. 33

*United States v. Muhammad*,
14 F.4th 352 (5th Cir. 2021) ........................................ 18, 20, 38

*United States v. Thibodeaux*,
211 F.3d 910 (5th Cir. 2000) ............................................*Passim*

*Weber v. PACT XPP Techs., AG*,
811 F.3d 768 (5th Cir. 2016) ............................................*Passim*

*Wellogix, Inc. v. SAP Am., Inc.*,
58 F. Supp. 3d 766 (S.D. Tex. 2014), *aff'd*,
648 F. App'x 398 (5th Cir. 2016) ........................................ 24, 33

*Wood v. Capita Ins. Servs. Ltd.*,
[2017] UKSC 24 .............................................................. 34

## STATUTES & RULES

28 U.S.C. § 1291 ........................................................................................... 1

28 U.S.C. § 1332(a) ...................................................................................... 1

28 U.S.C. § 1441 ........................................................................................... 1

28 U.S.C. § 1446 ........................................................................................... 1

S.D. Tex. L. R. 7.7 ..................................................................................... 10

x

## STATEMENT OF JURISDICTION[1]

The district court possessed subject matter jurisdiction over the underlying action pursuant to 28 U.S.C. § 1332(a) because it is a civil action involving citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. ROA.6, 36. Specifically, Appellant John Dimech ("Mr. Dimech") is an Australian citizen and resides in Australia. ROA.6, 13-14, 16, 106. Appellee Shell Trading U.S. Company ("STUSCO") is a Delaware corporation with its principal place of business in Houston, Texas. ROA.14. Mr. Dimech has pled that he is entitled to $29,400,000 in damages. ROA.21.[2]

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 because this is an appeal from an August 28, 2025 final judgment in which the district court dismissed all of Mr. Dimech's claims against STUSCO without prejudice after granting STUSCO's motion to dismiss for forum non conveniens. ROA.203-05.

---

[1] "ROA.____" refers to the Bates-stamped page of the Record on Appeal. "Open.Br.____" refers to Appellant's opening brief in this appeal.

[2] On January 17, 2025, Mr. Dimech filed suit against STUSCO—asserting Texas state law causes of action only—in the 269th Judicial District Court of Harris County, Texas. ROA.16-27. On January 21, 2025, prior to Mr. Dimech's service of STUSCO with the petition and STUSCO's obligation to answer Mr. Dimech's petition, STUSCO timely removed the action to the United States District Court of the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. §§ 1441 and 1446. ROA.5-35; *Tex. Brine Co., L.L.C. v. Am. Arb. Ass'n Inc.*, 955 F.3d 482, 487 (5th Cir. 2020) (authorizing "snap removal" by forum defendant). Mr. Dimech did not challenge the propriety of the removal in the district court or this Court.

Mr. Dimech filed his notice of appeal on September 25, 2025. ROA.204-05.

## ISSUE PRESENTED

Did the district court err in granting STUSCO's motion to dismiss for forum non conveniens and entering final judgment dismissing Mr. Dimech's action without prejudice to refiling the action in the appropriate forum?

## STATEMENT OF FACTS[3]

### I.    Mr. Dimech Files Suit Against STUSCO Challenging the Adequacy of the $8,170,000 Bonus That STUSCO Awarded Him in 2020

STUSCO acts as the single oil trading market interface for Shell, plc, formerly known as Royal Dutch Shell. ROA.17. Mr. Dimech is a former employee of STUSCO, serving as General Manager of North America Crude Oil Trading from 2010 to 2021 and as STUSCO's President from 2016 through 2021. ROA.17, 62, 106. The crux of this action is Mr. Dimech's allegations that, in 2020, STUSCO breached a contract and committed fraud by awarding him an $8,170,000 bonus for his work—an amount he contends is $29,400,000 lower than he deserved.

Mr. Dimech acknowledged in his petition that "the amount of [his] past [Commercial Bonus Plan] payments had been … commensurate with his business contribution and performance rating and the other [bonus compensation] factors

---

[3]    STUSCO cites to allegations in Mr. Dimech's petition for the sole purpose of describing the underlying dispute in this action. STUSCO expressly reserves its right to challenge the accuracy and merits of those allegations.

above" and that STUSCO's "[Commercial Bonus Payment] for the 2020 financial year"—the bonus that he now complains to have been inadequate—"was practically the same as his previous year's annual bonus."  ROA.20.  Notwithstanding the sweeping discretion granted to the Bonus Oversight Committee (the committee charged with managing the bonus plans at issue in this case) in deciding whether to grant a bonus, the criteria used in awarding a bonus, and the amount of a bonus as well as the final and conclusive nature of that committee's exercise of such discretion,[4] Mr. Dimech alleges that STUSCO departed from its purportedly

---

[4]     *See, e.g.*, ROA.126 ("The Commercial and Conditional Bonus Plans are managed by the Bonus Oversight Committee … The bonuses are entirely discretionary and at the sole discretion of the Bonus Oversight Committee."); ROA.127 (stating that Bonus Oversight Committee "make[s] all decisions regarding the amount of the bonus and the portion of the bonus awarded under the Commercial Bonus Plan to be paid in cash and the portion deferred and placed in the Conditional Bonus Plan. As a result, Mr. Dimech's beliefs about what his bonus amount should have been is not relevant because the amount was entirely at the Bonus Oversight Committee's discretion."); *see also* ROA.68 (Conditional Bonus Plan Rules, Rule 1.1: "The [Bonus Oversight] Committee may grant a[] [Conditional Bonus Plan] Award to any Eligible Employee on such terms (subject to these Rules) as it may determine.  Not all Eligible Employees will be made an Award.  The Committee will select which Eligible Employees will be made Awards and will determine the size of those Awards and the terms of those Awards.  The selection criteria, the size of the Awards made and the terms of those Awards may change from time to time."); ROA.73 (Conditional Bonus Plan Rules, Rule 11(e): "Without prejudice to an Employee's right in respect of a[] [Conditional Bonus Plan] Award subject to and in accordance with the express terms of these Rules and any Performance Conditions and/or any other condition set under Rule 1.4, no Employee has any right to have any decision or discretion exercised in a particular manner (or at all)."); *id.* (Conditional Bonus Plan Rules, Rule 11(f)(ii): "Without prejudice to an Employee's right in respect of a[] [ Conditional Bonus Plan] Award subject to and in accordance with the express terms of these Rules and any Performance Conditions and/or any

3

"established process" for determining bonus payments when it set the amount of his 2020 bonus.  ROA.18-21.  As a result, he complains that he was awarded only an "$8,100,000 [sic]" bonus instead of a $37,500,000 bonus.  ROA.21, 101.[5]

On January 17, 2025, Mr. Dimech filed suit against STUSCO in Texas state court, asserting Texas state law claims for breach of contract, fraud, and fraudulent inducement.  ROA.16-27.  All of the claims are grounded in Mr. Dimech's complaint that STUSCO's 2020 award of an $8,170,000 bonus was improper.  *Id.*; ROA.107.

## II.  STUSCO Moves to Dismiss Mr. Dimech's Claims for Forum Non Conveniens Based on a Mandatory Forum Selection Clause Requiring Disputes Arising Under or In Connection With Mr. Dimech's Bonus Award to Be Brought in an English Court

Following removal of Mr. Dimech's action to federal court, STUSCO filed a motion to dismiss the action for forum non conveniens on the ground that the Conditional Bonus Plan Rules (described in greater detail below) contains a mandatory forum selection clause granting English courts "exclusive jurisdiction in

---

other condition set under Rule 1.4, no Employee has any right to compensation resulting from … any exercise of a discretion or a decision taken under these Rules, or any failure to exercise a discretion or take a decision"); ROA.74 (Conditional Bonus Plan Rules, Rule 12.1: "The decision of the [Bonus Oversight] Committee, in its sole and absolute discretion, on the interpretation of these Rules or in any dispute relating to a[] [Conditional Bonus Plan] Award or matter relating to these Rules or the terms of any Award will be final and conclusive.").

[5]    While the record does not explain the discrepancy in the parties' description of the amount of Mr. Dimech's bonus—$8,100,000 (Mr. Dimech) versus $8,170,000 (STUSCO)—Mr. Dimech has not argued that the discrepancy is material.  For the purpose of this brief, STUSCO will describe the amount as $8,170,000.

respect of disputes arising under or in connection with these Rules or any Award."
ROA.46-84.  Consequently, Mr. Dimech's action could not be brought in Texas.

In its motion, STUSCO established that Mr. Dimech—as a member of its trading organization—participated in its Conditional Bonus Plan ("ConditionalBP"). ROA.62.  As noted above, the ConditionalBP is managed by a Bonus Oversight Committee, the key members of which reside and work in London, England.  *Id.*[6] That plan is governed by the Rules of the Shell Trading Conditional Bonus Plan ("the ConditionalBP Rules").  *Id.*  On March 31, 2020, STUSCO awarded Mr. Dimech a single $8,170,000 bonus payment, the alleged inadequacy of which is the subject of this action.  ROA.126.  ***A portion*** of that bonus was awarded as a deferred, conditional bonus under the ConditionalBP ("ConditionalBP Award").  ROA.75-84, 126.  STUSCO memorialized the ConditionalBP Award in a ConditionalBP Award Certificate ("ConditionalBP Award Certificate") (*id.*), and STUSCO attached a copy of the ConditionalBP Rules to the ConditionalBP Award Certificate (ROA.69, 73, 79, 84).  Those documents reflected the amount of the award, when and under what circumstances the award would vest, and all other terms of the award.  ROA.65-76, 79, 84.  Mr. Dimech does not dispute that he received those documents.

The ConditionalBP Award Certificate states that the ConditionalBP Award is

---

[6]    While Mr. Dimech describes the Commercial Bonus Plan as a "U.S.-based compensation program administered locally" (Open.Br.3), he cites no evidence supporting that assertion.

granted subject to the terms and conditions of the ConditionalBP Award Certificate and ConditionalBP Rules. ROA.80. Mr. Dimech was required to indicate his acceptance of the ConditionalBP Award and its terms and conditions by clicking "accept" on an internal STUSCO website. ROA.69, 73, 79, 84. If he did not, the ConditionalBP Award would have been deemed never to have been granted. ROA.79, 84. Mr. Dimech does not dispute that he received and accepted the ConditionalBP Award as well as its terms and conditions. ROA.75-84, 126.

Pertinent to this appeal, the ConditionalBP Rules contain a conspicuous and unambiguous mandatory forum selection and choice of law clause: (1) granting "the English Courts … exclusive jurisdiction in respect of disputes arising under or in connection with these Rules or any Award"; and (2) stating "English law governs these Rules and all Awards and their construction":

## 14 Governing law and jurisdiction

English law governs these Rules and all Awards and their construction. The English Courts have exclusive jurisdiction in respect of disputes arising under or in connection with these Rules or any Award.

ROA.75. STUSCO established that the forum selection clause was an enforceable mandatory forum selection clause that applied to Mr. Dimech's claims and that public interest factors weighed in favor of enforcing the clause. ROA.54-59.[7]

---

[7]    In his opening brief, Mr. Dimech asserts that "STUSCO was operating … in accordance with Dimech's local employment contract, which was governed by U.S. employment law and within Appellee's U.S. commercial trading employee-

In response to STUSCO's motion to dismiss, Mr. Dimech argued that the mandatory forum selection clause in the ConditionalBP Rules do not apply to his claims because his claims "are not based on his award under the Shell ***Conditional*** Bonus Plan that Defendant has hung its hat on, but the underpayment of his ***Commercial*** Bonus Plan Award, which is a different component of his compensation." ROA.97-98 (emphasis added). He also argued that private and public interest factors supported his bringing suit in Texas. ROA.102-04.

Specifically, Mr. Dimech argued that there were two separate and independent components to his compensation at STUSCO—an immediate cash bonus under the Commercial Bonus Plan ("CommercialBP") and a deferred conditional bonus under the ConditionalBP described above. ROA.98-99. Mr. Dimech claimed that he was merely challenging the amount of the bonus he received under the ***Commercial***BP, ***not*** the amount of the bonus he received under the ***Conditional***BP. ROA.101, 107. In support, Mr. Dimech cited his allegation that the amount of the bonus he was challenging was $8,100,000, not the $3,060,000 he received for his ConditionalBP Award. ROA.101 ("[T]he Commercial Bonus Award he is contesting was in the amount of $8,100,000."); ROA.107 ("The Commercial Bonus Award that I received that I contend was out of compliance and contrary to representations was in the

---

management contract." Open.Br.7 (citing ROA.16-17). But the cited pages of the record do not support that statement, and the record does not contain a copy of this putative "local employment contract" "governed by U.S. employment law."

amount of $8,100,000.00.  The Shell Conditional Bonus Plan Award that STUSCO

mistakenly claims that I am challenging was in the amount of $3,060,000.").  Thus,

Mr. Dimech asserted, the forum selection clause in the ConditionalBP Rules that

governed ConditionalBP Awards did not apply to his claims.

In its reply in support of its motion to dismiss, STUSCO directly addressed

and refuted Mr. Dimech's patently inaccurate argument in his response that he was

merely challenging his CommercialBP Award and not his ConditionalBP Award.

Specifically, STUSCO replied that:

(1)    The Bonus Oversight Committee, which manages both the CommercialBP and ConditionalBP, awarded Mr. Dimech a single bonus payment of $8,170,000 in 2020.  ***That single payment is the CommercialBP Award***, ***but the ConditionalBP Award is a component of the CommercialBP Award***.  In other words, the CommercialBP Award and ConditionalBP Award ***are not*** separate and independent bonus awards.

Specifically, Mr. Dimech's 2020 CommercialBP Award consisted of three components: (i) the first $100,000 of the $8,170,000 bonus paid in cash; (ii) 60% of the remaining $8,070,000 paid in cash; and (iii) 40% of the remaining $8,070,000 contributed to the ConditionalBP.

(2)    Mr. Dimech's petition and his response to STUSCO's motion to dismiss challenged the $8,170,000 CommercialBP Award ***in its totality*** and argued that said total amount should have been $29,400,000 higher.  Thus, by challenging ***the entirety*** of his CommercialBP Award, Mr. Dimech is directly and necessarily challenging his ConditionalBP Award as well because it is a significant component of his CommercialBP Award, thereby triggering the forum selection clause that applies to any disputes arising under or in connection with a ConditionalBP Award.

ROA.116-20.  To support its rebuttal of Mr. Dimech's argument in his response and to counter the supporting declaration Mr. Dimech filed with his response, STUSCO submitted a declaration to support the arguments above.  ROA.126-28.

**III.    The Magistrate Judge Issues Its Memorandum and Recommendation That STUSCO's Motion to Dismiss for Forum Non Conveniens Be Granted and Mr. Dimech's Claims Be Dismissed Without Prejudice, and the District Court Adopts the Memorandum and Recommendation**

On July 14, 2025, the magistrate judge assigned to the case—the Honorable Christina A. Bryan—issued her memorandum and recommendation ("M&R") that: (1) STUSCO's motion to dismiss for forum non conveniens be granted based on the mandatory forum selection clause in the ConditionalBP Rules; and (2) Mr. Dimech's claims be dismissed without prejudice to refiling in an English Court.  ROA.129-36.

At no point during the ***four-month period*** between STUSCO's filing of its reply in support of its motion to dismiss (with the accompanying declaration) on March 11, 2025 and the magistrate judge's issuance of her M&R did Mr. Dimech ever object that STUSCO's reply contained new arguments, object to STUSCO's attachment of a declaration in support of its reply, or move for leave to file a sur-reply to rebut the arguments and evidence in STUSCO's reply.

On August 5, 2025, Mr. Dimech filed objections to the magistrate judge's M&R.  ROA.144-76.  Only then did Mr. Dimech finally (and untimely) object to STUSCO's submission of new arguments and evidence in its reply in support of its motion to dismiss.  ROA.158-61.  Ironically, however, Mr. Dimech's objections

included a slew of new alleged facts in support of his argument that the forum selection clause did not apply to his claims—new alleged facts that Mr. Dimech failed to support with an iota of evidence in either his response to STUSCO's motion to dismiss or his objections to the magistrate judge's M&R. *See, e.g.*, ROA.151-53 (starting with "The timeline for determining …" on page 151 through the end of the bullet list on page 153).[8]   STUSCO filed a response to Mr. Dimech's objections,

---

[8]   Mr. Dimech repeats the same language virtually verbatim in his opening brief in this appeal.  Open.Br.8-11.  His supporting record citation for that language is ROA.151-53, the same passage in his objections to the magistrate's M&R that he failed to support with any evidence.  As it did below, STUSCO objects to this Court's consideration of bald factual assertions that were not timely submitted to the magistrate judge and were not supported by competent evidence.  *See, e.g.*, *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 369 (5th Cir. 2024) ("[T]his court considers arguments forfeited if they are not raised before a magistrate judge, even if they are subsequently raised before the reviewing district court in objections to the magistrate judge's report and recommendation."); *id.* at 371-72 ("[A]llowing forfeited arguments to be cured by appellate briefing would contradict our well-established precedent on issue preservation, and it would undermine the core purposes of our forfeiture rules by opening the door for appellate review of un- or underdeveloped records." / also declining to consider forfeited arguments that were "purely legal"); *McIntosh v. Partridge*, 540 F.3d 315, 327 (5th Cir. 2008) ("As a general rule, this court 'will not enlarge the record on appeal with evidence not before the district court.'") (quoting *Trinity Indus., Inc. v. Martin*, 963 F.2d 795, 799 (5th Cir. 1992)); S.D. Tex. L. R. 7.7 ("If a motion or response requires consideration of facts not appearing of record, proof by affidavit or other documentary evidence must be filed with the motion or response.").

If, however, this Court considers such language, it hurts Mr. Dimech more than it helps.  It confirms that the ConditionalBP Award (which Mr. Dimech accepted) is part of the Commercial BP Award and that Mr. Dimech's challenge to his total Commercial BP Award in 2020 also constitutes a challenge to the amount of the ConditionalBP Award, thereby triggering the mandatory forum selection clause requiring dismissal of his claims for forum non conveniens.  Open.Br.8-11.

which included STUSCO's objections to Mr. Dimech's failure to timely assert the above arguments and alleged facts. ROA.186-201.

On August 28, 2025, the district court—the Honorable Sim Lake—entered: (1) an order adopting the magistrate judge's M&R (ROA.202); and (2) a final judgment dismissing Mr. Dimech's action without prejudice to refiling in the appropriate forum (ROA.203). This appeal followed. ROA.204-05.

## SUMMARY OF ARGUMENT

This Court should affirm the district court's final judgment granting STUSCO's motion to dismiss for forum non conveniens and dismissing Mr. Dimech's claims without prejudice. As shown below, the district court did not err in so holding where: (1) the forum selection clause upon which the district court based its decision is mandatory, enforceable, and applicable to Mr. Dimech's claims; and (2) the public interest factors unanimously and overwhelmingly support dismissal of Mr. Dimech's claims for forum non conveniens. Thus, Mr. Dimech failed to satisfy his heavy burden to prove that this is an "exceptional" case that overcomes the presumption in favor of dismissal for forum non conveniens.

Specifically, the district court did not err in ruling that Mr. Dimech improperly attempted to circumvent the mandatory forum selection clause by fundamentally mischaracterizing the $8,170,000 CommercialBP Award he seeks to challenge as a completely separate and independent bonus from his ConditionalBP Award. It's

not.    Rather, STUSCO argued and presented evidence that Mr. Dimech's CommercialBP Award was issued as a single $8,170,000 payment and that approximately 40% part of that payment consisted of Mr. Dimech's ConditionalBP Award (which there is no dispute is subject to the mandatory forum selection clause). In short, STUSCO presented ample evidence to support the district court's finding that Mr. Dimech's claims challenging the propriety of his $8,170,000 CommercialBP Award explicitly and necessarily challenge his ConditionalBP Award as well.    Thus, Mr. Dimech's claims should be dismissed for forum non conveniens based on the mandatory forum selection clause.

Mr. Dimech's opening brief seems to acknowledge the futility of his appeal. Mr. Dimech does not dispute the core bases for the district court's decision.    He does not dispute that: (1) the forum selection clause is mandatory; (2) the forum selection clause is enforceable; (3) Mr. Dimech's claims necessarily challenge his ConditionalBP Award where that award and his CommercialBP Award are inextricably intertwined; (4) the forum selection clause applies to his ConditionalBP Award; (5) the private interest factors support dismissal for forum non conveniens when, as in this case, a mandatory forum selection clause applies; and (6) the public interest factors do not defeat dismissal.    Instead, Mr. Dimech spends his opening brief punching ineffectively at the margins, relying on waived, meritless, and inconsequential arguments that should be summarily rejected in full.

12

To be clear, STUSCO *does not* seek to deprive Mr. Dimech of his day in court. STUSCO merely seeks to hold Mr. Dimech to his legally-binding promise to litigate any disputes arising under or in connection with his ConditionalBP Award in an English court. Accordingly, the district court's judgment should be affirmed, and Mr. Dimech should be required to file his claims in an English court.

## ARGUMENT

### I.    Standard of Review

When a district court grants a motion to dismiss for forum non conveniens based on a forum selection clause, the Fifth Circuit reviews *de novo* whether the clause is mandatory, whether the clause is enforceable, and the district court's interpretation of the clause. *See, e.g.*, *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016); *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016). The Fifth Circuit reviews for abuse of discretion the district court's balancing of the public interest factors in determining whether it should retain the case despite the existence an enforceable forum selection clause. *Id*.

### II.    The District Court Did Not Err in Granting STUSCO's Motion to Dismiss for Forum Non Conveniens Based on the Mandatory Forum Selection Clause

#### A.    Motions to Dismiss for Forum Non Conveniens Should Be Granted in "All But the Most Exceptional Cases" When a Mandatory Forum Selection Clause Exists

The Supreme Court of the United States has stated that "the appropriate way

13

to enforce a forum-selection clause pointing to a … foreign forum is through the doctrine of forum non conveniens." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). Critically, the Supreme Court stated that when a valid forum selection clause exists, courts should generally transfer the action to the forum agreed upon by the parties except in "the most exceptional cases":

> The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum." The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and further vital interests of the justice system." For that reason … "a valid forum-selection cause clause [should be] given controlling weight in all but the most exceptional cases."

*Id*. at 63 (citations omitted); *see also id*. at 66 ("When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. … In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain.").[9]

---

[9] While the motion to transfer in *Atlantic Marine* involved a motion to transfer under 28 U.S.C. § 1404(a) based on a forum selection clause and the standard for evaluating the motion in that case was discussed in that context, the Supreme Court made clear that the analysis would be the same in cases involving a motion to dismiss for forum non conveniens based on a forum selection clause. *Id*. at 62, 65 n.8. This Court agrees, adopting and applying the *Atlantic Marine* analysis in cases involving motions to dismiss for forum non conveniens based on a forum selection clause. *See, e.g.*, *Weber*, 811 F.3d at 758-76 (*e.g.*, p. 766 n.6: "Although the Court's analysis of the effect of the FSC was in the context of a § 1404 motion, the Court explicitly noted that § 1404(a) is just a codification of the FNC doctrine 'for the subset of cases in which the transferee forum is within the federal court system. …' The factors that courts consider in evaluating the propriety of a § 1404(a) transfer and an FNC dismissal are substantively identical …" (citation omitted)).

This presumption in favor of enforcing a forum selection clause is given effect in several important respects. *First*, the plaintiff bears the burden of proving that transfer to the agreed-upon forum is unwarranted. "[A]s the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. … [W]hen a plaintiff agrees by contract to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its 'venue privilege' before a dispute arises. Only that initial choice deserves deference, and the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 63-64.

*Second*, "the plaintiff's choice of forum merits no weight." *Id*. at 63. "A court evaluating a defendant's … motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the pre-selected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id*. at 64. "As a consequence, a district court may consider arguments about public-interest factors only." *Id*. "Because th[e] [public interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in

15

unusual cases. Although it is 'conceivable in a particular case' that the district court 'would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause,' such cases will not be common." *Id*. (citations omitted). To be clear, it is Mr. Dimech—who "must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id*. at 67.

*Third*, while "[a] federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits," that general rule ***does not*** apply when a forum selection clause exists. *Id.* at 65. "[A] plaintiff who files suit in violation of a forum-selection clause enjoys no such 'privilege' with respect to its choice of forum, and therefore it is entitled to no concomitant 'state-law advantages.' Not only would it be inequitable to allow the plaintiff to fasten its choice of substantive law to the venue transfer, but it would also encourage gamesmanship." *Id*. Thus, "[t]he court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right." *Id*. at 65-66.

## B.    The Forum Selection Clause Is Mandatory

The initial inquiry in reviewing the district court's decision is whether the forum selection clause at issue in this case is mandatory or permissive. *See, e.g.,*

16

*Weber*, 811 F.3d at 768.[10]    This Court has generally described the distinction between mandatory and permissive forum selection clauses as follows:

> A mandatory FSC affirmatively requires that litigation arising from the contract be carried out in a given forum.  By contrast, a permissive FSC is only a contractual waiver of personal-jurisdiction and venue objections if litigation is commenced in the specified forum.  Only mandatory clauses justify transfer or dismissal.

*Id*.  A forum selection clause is mandatory "only if it contains clear language specifying that litigation *must* occur in the specified forum—and language merely indicating that the courts of a particular place 'shall have jurisdiction' (or similar) is insufficient to make an FSC mandatory." *Id*.

The district court did not err in holding that the forum selection clause at issue in this case is mandatory because Mr. Dimech never argued in the district court that the clause is permissive.  ROA.132.  Furthermore, Mr. Dimech does not dispute that the clause is mandatory in his opening brief in this Court.  Therefore, Mr. Dimech has waived any argument to the contrary and cannot raise the issue for the first time in his reply brief.  *See, e.g.*, *Benamou v. Wells Fargo Bank Nat'l Ass'n for Carrington Mortg. Loan Tr., Series 2007-FRE1, Asset-Backed Pass-Through Certificates*, 711 F. App'x 241, 242 (5th Cir. 2018) ("[A] party who objects to the magistrate judge's report waives legal arguments not made in the first instance

---

[10]    While STUSCO cites the magistrate judge's M&R herein, STUSCO characterizes that decision as the district court's decision because the district court adopted the magistrate judge's M&R in full.  ROA.202.

before the magistrate judge." (citation omitted)); *Fleny v. Johnson*, 243 F.3d 215, 219 n.3 (5th Cir. 2001) ("We have held that issues raised for the first time in objections to the report of a magistrate judge are not properly before the district judge."); *United States v. Muhammad*, 14 F.4th 352, 363 n.3 (5th Cir. 2021) ("Litigants may not raise arguments for the first time in a reply brief."); *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) ("It has long been the rule in this circuit that any issues not briefed on appeal are waived.").

In any event, the forum selection clause's express and unambiguous language conclusively establishes that it is mandatory: "The English Courts have ***exclusive*** jurisdiction in respect of disputes arising under or in connection with these Rules or any Award." ROA.75 (emphasis added). When a forum selection clause provides for "exclusive" jurisdiction in a particular forum, this Court and other courts have found it to be mandatory. *See, e.g.*, *Argyll Equities LLC v. Paolino*, 211 F. App'x 317, 319 (5th Cir. 2006) (holding that clause referring to "the exclusive jurisdiction of the courts sitting in Kendall County, Texas" was mandatory); *FCX Solar, LLC v. FTC Solar, Inc.*, No. 6:21-CV-548-ADA, 2021 WL 4953912, at *4 (W.D. Tex. Oct. 25, 2021) (holding that clause vesting "exclusive jurisdiction" in New York courts was mandatory); *Matheson Tri-Gas, Inc. v. FlexTM, Inc.*, No. 4:18-CV-0248, 2018 WL 2363958, at *1, *5 (S.D. Tex. May 24, 2018) (holding that clause expressing parties' agreement "to consent to the exclusive jurisdiction of the courts of the State

of Texas with regard to any dispute arising hereunder" was mandatory).

### C.    The Forum Selection Clause Is Enforceable

The next inquiry is whether the mandatory forum selection clause at issue in this case is enforceable. *See, e.g.*, *Weber*, 811 F.3d at 773. Forum selection clauses are "presumptively valid." *Id*. at 774.[11] This Court has held that the presumption of validity may be overcome only "by a clear showing that the clause is 'unreasonable' under the circumstances." *Id*. at 773. "Unreasonableness potentially exists where (1) the incorporation of the [FSC] into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the [FSC] would contravene a strong public policy of the forum state." *Id*. "Arguments that go to the validity of the ***contract as a whole*** do not prevent enforcement of an FSC; instead, the party seeking to avoid enforcement must demonstrate that ***the FSC*** is invalid rather than merely claim the contract is invalid." *Id*. at 773-74 (emphasis added).

Here, the district court did not err in finding that Mr. Dimech never challenged

---

[11]    This Court has acknowledged that it has not drawn a distinction between enforceability and validity, "treat[]ing those words as synonyms in the forum-selection clause context." *Barnett*, 831 F.3d at 302.

the forum selection clause's enforceability (as the courts have understood that term) before the magistrate judge issued its M&R,[12] and Mr. Dimech does not make such a challenge in his opening brief on appeal. ROA.132. As a result, Mr. Dimech waived any argument that the forum selection clause is unenforceable and cannot raise the issue for the first time in his reply brief. *See, e.g.*, *Fintech Fund, F.L.P. v. Horne*, 836 Fed. App'x 215, 226 (5th Cir. 2020) (declining to consider whether forum selection clause was enforceable because appellant "[did] not brief enforceability and thus [did] not meet its burden to overcome the presumption of enforceability."); *see also Benamou*, 711 F. App'x at 242; *Fleny*, 243 F.3d at 219 n.3; *Muhammad*, 14 F.4th at 363 n.3; *Thibodeaux*, 211 F.3d at 912.

At best, Mr. Dimech has merely argued (incorrectly) that the forum selection clause **applies** to challenges to ConditionalBP awards only and, thus, does not **apply** to his challenge to STUSCO's CommercialBP award. Open.Br.18-27; *infra* at 21-37. Thus, the district court did not err in concluding that the clause is enforceable.

---

[12] *See, e.g.*, *Barnett*, 831 F.3d at 300 (argument by plaintiff that forum selection clause was "void" because it "direct[ed] litigation to a forum in which the limitations period for breach of an employment contract is less than two years."); *Weber*, 811 F.3d at 773-74 (argument by plaintiff that forum selection clause was unenforceable because: (1) it would deny him a remedy; (2) there was never any agreement to begin with; (3) the defendant was estopped from enforcing the clause because it took the position it was not bound by the agreement containing the clause; and (4) unclean hands prevented enforcement of the clause).

**D.     The Forum Selection Clause Applies to Mr. Dimech's Claims**

      **1.     Mr. Dimech's Claims Fall Squarely Within the Scope of the Forum Selection Clause Because They Directly and Necessarily Challenge the Amount of His ConditionalBP Award and the Manner in Which It Was Calculated**

The district court also did not err in ruling that the forum selection clause applies to all of Mr. Dimech's claims in this case. Mr. Dimech's petition established that the crux of his claims is that his receipt of an $8,170,000 CommercialBP Award in 2020 fell $29,400,000 short of the amount he claims to deserve based on his belief that the Bonus Oversight Committee improperly failed to calculate that award in the same manner using the same criteria as the committee had in the past. *See, e.g.*, ROA.21 ("Had the factors for change in year-to-year profitability and increase in performance ranking been applied in the manner that had previously been used for CBP calculation, Dimech's Commercial Bonus Program payment would have been multiples of his 2019 CBP payment. This represents a shortfall of approximately $29,400,000 for the 2020 financial year."); ROA.22-23 (Breach of Contract Claim: "Defendant breached the terms of its agreement with Plaintiff by refusing to pay him the full Commercial Bonus Payment amount to which he was entitled"); ROA.23 (Fraud Claim: "As described above, Defendant made misrepresentations to Plaintiff, including but not limited to, representations to Dimech that Defendants would pay under the CBP in the same manner and per the same criteria as it had in the past."); ROA.23-24 (Fraudulent Inducement Claim: "As described above, Defendant made

21

misrepresentations to Plaintiff, including but not limited to, representations to Dimech that Defendant would pay under the CBP in the same criteria as it had in the past."); ROA.24 (seeking as damages "[t]he full compensation Defendant should have paid him per the terms of its contract with Dimech, namely the value of the bonus for 2020 as calculated per the CBP as applied in previous years.").

The record—including Mr. Dimech's admissions in his response to STUSCO's motion to dismiss—contains additional, conclusive support that Mr. Dimech's claims challenging his CommercialBP Award explicitly and necessarily challenge his ConditionalBP Award as well. For example:

- STUSCO submitted a declaration from Erin Verdon—a member of the Bonus Oversight Committee charged with managing the CommercialBP and ConditionalBP (ROA.126)—who testified that Mr. Dimech's CommercialBP Award consisted of a single payment of $8,170,000 and that said amount included Mr. Dimech's ConditionalBP Award.[13]

---

[13]    ROA.126 ("To be clear, the Bonus Oversight Committee awards only one amount of money as a bonus to an eligible employee. … The employee will receive the first $100,000 as a cash award, and the amount over $100,000 is paid 60% in cash and 40% is contributed toward the Conditional Bonus Program."); *id.* ("In 2020, Mr. Dimech was awarded a total bonus of $8,170,000. He received the first $100,000 in cash plus sixty percent (60%) of $8,070,000 paid in cash ($4,940,000) and the remaining forty percent (40%) ($3,060,000) was contributed towards the Conditional Bonus Plan."); ROA.126-27 ("Mr. Dimech's statement in his declaration is incorrect that the $29,400,000 he is seeking in this lawsuit for an increased bonus is not related to the Conditional Bonus Program. If the committee had awarded Mr. Dimech a $37,500,000 bonus [$8,170,000 plus $29,400,000], a significant portion (i.e. 40%) of this amount would have been placed automatically in the Conditional Bonus Program and subject to the Conditional Bonus Award

- Mr. Dimech argued and testified in his response to STUSCO's motion to dismiss that he is challenging the full $8,170,000 amount of the CommercialBP Award, which would therefore necessarily include the ConditionalBP Award component of that award.[14]

  If Mr. Dimech is merely challenging the non-ConditionalBP components of his CommercialBP Award as he erroneously suggests, then Mr. Dimech would be challenging an award of $4,942,000 (initial $100,000 plus 60% of $8,170,000-$100,000)—not $8,170,000.

In light of the overwhelming evidence above, the district court did not clearly err in finding that Mr. Dimech is challenging his ConditionalBP Award and that finding should not be disturbed. *See, e.g.*, *Adams v. Merck & Co.*, 353 F. App'x 960, 962 (5th Cir. 2009) ("We will find that a district court has abused its discretion when its [forum non conveniens] ruling is based … on a clearly erroneous assessment of

---

Agreement and 2020 Rules of the Shell Trading Conditional Bonus Plan, which contains an English forum selection and choice of law clause.").

Mr. Dimech baldly asserts in his opening brief that Ms. Verdon did not have "first-hand knowledge" of the details of her description of Dimech's compensation and the interrelatedness of the CommercialBP Award and ConditionalBP Award. Open.Br.17. That not only is refuted by Ms. Verdon's testimony that she was a member of the Bonus Oversight Committee that managed those awards (ROA.126) but also is an evidentiary objection that Mr. Dimech waived by failing to make that objection before the magistrate judge issued its M&R. *See, e.g.*, *Benamou*, 711 F. App'x at 242; *Fleny*, 243 F.3d at 219 n.3.

[14]     ROA.101 ("[T]he Commercial Bonus Award he is contesting was in the amount of $8,100,000."); ROA.107 ("The Commercial Bonus Award that I received that I contend was out of compliance and contrary to representations was in the amount of $8,100,000.00. The Shell Conditional Bonus Plan Award that STUSCO mistakenly claims that I am challenging was in the amount of $3,060,000.00").

23

the evidence.").[15]  Accordingly, Mr. Dimech's direct challenge to his ConditionalBP Award triggers the forum selection clause in the ConditionalBP Rules, which—on its face—broadly applies to ***"disputes arising under or in connection with [the ConditionalBP] Rules or any [ConditionalBP] Award"***—and requires him to bring his claims in an English court.  ROA.75 (emphasis added).[16]

---

[15]   The *de novo* standard of review does not apply to the district court's finding above because the resolution of that factual issue does not require interpretation of the forum selection clause.  Mr. Dimech did not dispute below or in his opening brief in this appeal that the clause applies to disputes arising under or in connection with a ConditionalBP Award.  Nor does the above factual issue implicate whether the clause is mandatory or enforceable (other issues that are subject to *de novo* review).  But even if the *de novo* standard of review somehow applies to the district court's finding above, this Court should resolve it in STUSCO's favor because Mr. Dimech failed to present evidence that: (1) the $8,170,000 award ***does not*** include his ConditionalBP Award; or, stated another way, (2) the amount of his Conditional BP Award will be completely unaffected if his claims in this case are successful.

[16]   While Mr. Dimech did not dispute below or in his opening brief here that the forum selection clause, on its face, applies to "***disputes arising under or in connection with***" a ConditionalBP Award, courts have construed such language very broadly under both Texas and English law.  *See, e.g.*, *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 437-38 (Tex. 2017) ("[T]he parties agreed to resolve 'any dispute arising out of this Agreement' in Delaware. … This Court has observed that the words 'arising out of' have 'broad[] significance,'" / "[W]hen a forum-selection clause encompasses all 'disputes' 'arising out of' the agreement, instead of 'claims,' its scope is necessarily broader than claims based solely on rights originating exclusively from the contract." (citation omitted)); *Wellogix, Inc. v. SAP Am., Inc.*, 58 F. Supp. 3d 766, 778 (S.D. Tex. 2014), *aff'd*, 648 F. App'x 398 (5th Cir. 2016) ("[T]he phrase 'arising in connection with' has been found to reach 'every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract.'  Such a clause encompasses not only contract claims, but also statutory and common law trade secrets claims 'in connection with' the agreement." (citation omitted)); *Fintech Fund, F.L.P.*, 836 F. App'x at 223-26 ("Under English law, … forum-selection clauses 'in …

24

### 2. Mr. Dimech's Arguments Against the Applicability of the Forum Selection Clause to His Claims Should Be Summarily Rejected

#### a. The District Court Did Not Improperly Rely on Arguments and Evidence in STUSCO's Reply in Support of Its Motion to Dismiss

Recognizing the weakness of his arguments on the merits, Mr. Dimech devotes *six of the fifteen* pages of his opening brief's argument section complaining that the district court's finding that the forum selection clause applied to his claims improperly relied on arguments and evidence submitted in STUSCO's reply in support of its motion to dismiss. Open.Br.13-18. That argument fails because:

- STUSCO's argument in its reply that the forum selection clause applied to Mr. Dimech's claims challenging the ConditionalBP Award is the same exact argument STUSCO made in its motion to dismiss;

- STUSCO's motion to dismiss could not have anticipated that Mr. Dimech would make the patently erroneous argument in his

---

international commercial contract[s] should be liberally construed' and '[t]he words 'arising out of' should cover every dispute except a dispute as to whether there was ever a contract at all.'" (citation omitted) / applying English law to hold that plaintiff's claims were subject to forum selection clause vesting courts of England and Wales with exclusive jurisdiction where such clause broadly applied "to settle any dispute or claim arising out of or in connection with this Agreement or its subject matter or formation (including non-contractual disputes or claims)"); *UBS AG v. HSH Nordbank AG*, [2009] EWCA (Civ) 585 (English Law: ¶ 60: "The proper approach to the construction of clauses agreeing jurisdiction is to construe them widely and generously, and the words 'arising out of' or 'in connection with' apply to claims arising from pre-inception matters such as misrepresentation."); *Heaven Media Ltd. v. Everts*, No. A-22-CV-00025-LY, 2022 WL 18585892, at *3 (W.D. Tex. May 10, 2022) ("English law requires forum-selection clauses to be construed broadly.").

response that he was challenging only his CommercialBP Award and not his ConditionalBP Award because his CommercialBP Award is a completely separate and independent award from his ConditionalBP Award; and

• STUSCO's arguments in its reply that the CommercialBP Award is a single bonus payment consisting of three components (one of which is the ConditionalBP Award that comprises approximately 40% of the Commercial BP Award) as well as STUSCO's submission of evidence to support that fact directly replied to Mr. Dimech's erroneous argument to the contrary in his response.

If STUSCO had not presented the above evidence with its reply, Mr. Dimech's mischaracterization of the bonus award he was challenging and the relationship between the CommercialBP Award and ConditionalBP Award would have gone unchallenged.

*Supra* at 5-9. Accordingly, the above arguments that Mr. Dimech contends were improperly submitted in STUSCO's reply (Open.Br.14) ***were not*** actually new, and the evidence in STUSCO's reply was necessary to rebut the erroneous factual assertions that Mr. Dimech raised for the first time in his response.

Ample authority supports the submission of these complained-of arguments and evidence in STUSCO's reply under these circumstances. *See, e.g., Cognizant Trizetto Software Group, Inc. v. Infosys Ltd.*, No. 3:24-CV-21587-X, 2026 WL 1630219, at *1 (N.D. Tex. Mar. 27, 2026) (considering argument and evidence submitted in reply in support of motion to dismiss / "[C]ourts routinely permit reply evidence that rebuts an opposing party's arguments and bolsters arguments already raised."); *Lynch v. Union Pac. R.R. Co.*, No. 3:13-CV-2701-L, 2015 WL 6807716,

26

at *1 (N.D. Tex. Nov. 6, 2015) (considering arguments and evidence submitted in reply in support of motion for summary judgment where "[t]he matters objected to by Plaintiff with respect to Defendant's summary judgment reply and evidence … are specifically directed at and responsive to arguments and evidence in Plaintiff's response to Defendant's summary judgment motion. Consequently, the matters objected to by Plaintiff were not raised for the first time in Defendant's reply.").

It also is no small irony that Mr. Dimech's waiver argument was, itself, waived. During the four-month period between STUSCO's filing of its reply and the magistrate judge's issuance of its M&R, Mr. Dimech could have filed objections to the above arguments and evidence in STUSCO's reply and requested that they be stricken. But he didn't. Mr. Dimech also could have filed a motion for leave to file a sur-reply to respond to the above arguments and evidence in STUSCO's reply. But he didn't. Instead, what Mr. Dimech chose to do, for whatever reason, was wait until *after* the magistrate judge had already ruled before finally complaining about the above arguments and evidence. ROA.158-61. That's too little, too late. *See, e.g.*, *Benamou*, 711 F. App'x at 242; *Fleny*, 243 F.3d at 219 n.3.

The case law that Mr. Dimech cites in support of his argument is inapposite. Open.Br.13-14, 16. *First*, as shown above, STUSCO's arguments in its reply were not new and were directly responsive to the arguments and evidence in Mr. Dimech's response. *See, e.g.*, *Lynch*, 2015 WL 6807716, at *1 ("Because Defendant's reply

27

and related evidence are responsive to arguments raised and evidence relied on by Plaintiff in his summary judgment response, this is not a situation in which a new issue was raised for the first time in a reply that would require the court to give him an opportunity to respond to Defendant's reply before the court rules on the summary judgment motion, or that would require the court to strike the reply.").

*Second*, Mr. Dimech had more than adequate opportunity—four full months—to object to and/or request leave to respond to the arguments and evidence in STUSCO's reply—before the magistrate judge issued its M&R.  ROA.116-128, 129-36.  But he forfeited any waiver argument by inexplicably choosing not to.

*Third*, the case law Mr. Dimech cites is factually distinguishable.  *In re Deepwater Horizon*, 824 F.3d 571, 575 (5th Cir. 2016) addressed this Court's refusal to consider new arguments raised in a reply brief on appeal, not a district court's refusal to consider new arguments and evidence raised in a reply in support of a motion.  *Jones v. Cain*, 600 F.3d 527, 540-41 (5th Cir. 2010) involved an argument that indisputably was not raised until a sur-reply brief and, even then, only to counter a separate argument that was not before the Fifth Circuit on appeal.  *Simmons v. T-Mobile USA*, No. H-06-1820, 2006 WL 3447684 (S.D. Tex. Nov. 22, 2006) actually hurts Mr. Dimech where the district court agreed to consider the argument and evidence attached to the reply "[b]ecause full and complete briefing is useful to the adjudication of the case." *Id*. at *1.  The district court further noted that the opposing

28

party's "alternative and unopposed request for leave to file a sur-reply will allow it to address what it characterizes as [the movant's] new evidence." *Id*. Again, Mr. Dimech did not seek such relief. In *Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770 (5th Cir. 2024), this Court stated that "when a party raises new arguments or evidence for the first time in a reply, the district court must either give the other party an opportunity to respond or decline to rely on the new arguments and evidence." *Id*. at 775. But the nonmovant in that case filed a motion for leave to file a sur-reply and the district court denied the motion. Again, Mr. Dimech did not file such a motion. And *Springs Industries, Inc. v. American Motorists Insurance Company*, 137 F.R.D. 238 (N.D. Tex. 1991) is inapposite because the issue in that case was whether the district court should have granted the movant leave to file a ***reply*** in response to the non-movant's ***response*** in light of the nonmovant's concern that the movant would file new evidence with its reply. Notably, after describing the various arguments for and against submitting evidence with a reply, the district court ultimately granted the movant leave to file a reply as the district court could "discern no palpable injustice in considering new supporting materials" but allowed the parties to then file an additional response and final reply brief. *Id*. at 240. Again, Mr. Dimech did not object to STUSCO's submission of evidence with its reply or move for leave to file a sur-reply.

One final point is worth making. In connection with Mr. Dimech's cited case

29

law suggesting that this Court must provide an adequate opportunity for a nonmovant to adequately respond to new arguments and evidence raised in a reply in support of a motion, any such authority should apply only when the nonmovant has timely filed a motion seeking such an opportunity.  Trial courts should not be saddled with the burden to proactively coach a nonmovant to file such a motion and be punished with reversal if, as in this case, the nonmovant chooses not to do so. This Court should adhere, instead, to the general rule putting the burden on parties who have an objection to timely preserve that objection before the trial court rules. *See, e.g.*, *Benamou*, 711 F. App'x at 242; *Fleny*, 243 F.3d at 219 n.3.

### b. The District Court Did Not Erroneously Interpret the Forum Selection Clause in Isolation From Other Provisions of the ConditionalBP Rules

Mr. Dimech next argues that the district court erroneously applied the ConditionalBP Rules' forum selection clause to Mr. Dimech's claims because the district court allegedly failed to interpret the clause "in the context of the ***entire*** contractual agreement of which it is a part."  Open.Br.18-24.  Specifically, Mr. Dimech argues that "[a]n examination of the entire [ConditionalBP] Rules document makes clear that Appellee's contention that they applied broadly to encompass other components of an eligible employees' compensation, which includes the amount determined under the Corporate Bonus Program" is not so broad.  *Id*. at 21.

In support, Mr. Dimech cites the highlighted text below from Rule 11(c) of

30

the ConditionalBP Rules:

> (c)    Nothing in the Rules or in the terms of or the practice of granting Awards forms part of an Employee's contract of employment. The rights and obligations arising from the employment relationship between the Employee and any Member of the Group are separate from, and are not affected by, these Rules or any Awards made. The grant of an Award does not create any right to, or expectation of, the grant of an Award on the same basis, or at all, in the future.

ROA.73 (emphasis added). According to Mr. Dimech, the highlighted text indicates that the ConditionalBP Rules "limits the scope of its own application to only apply to the Awards made under the Conditional Bonus Plan" and "[t]hus, calculation of the Commercial Bonus Program compensation and disputes regarding such would be outside the coverage of the Rules." Open.Br.21-22.

To begin, Mr. Dimech's argument should be summarily rejected because Mr. Dimech waived it by failing to assert it until after the magistrate judge had already issued its M&R granting STUSCO's motion to dismiss. *See, e.g.*, ROA.96-108, 168-71; *Benamou*, 711 F. App'x at 242; *Fleny*, 243 F.3d at 219 n.3.

Even if it was properly preserved, Mr. Dimech's argument fails on the merits. Mr. Dimech's argument gives away the game by conceding that the ConditionalBP Rules and the forum selection clause apply to any disputes arising under or in connection with any ConditionalBP Award. The forum selection clause, on its face, is unambiguous on that point (ROA.75), and Mr. Dimech does not argue that Rule 11(c) conflicts with the clause or renders the clause ambiguous on that point so as to impact the applicability of the clause to ConditionalBP Awards in any way.

31

Consequently, based on STUSCO's showing that Mr. Dimech's claims challenge Mr. Dimech's ConditionalBP Award (*supra* at 5-9, 22-23),  the forum selection clause applies to Mr. Dimech's claims even if this Court concludes that the clause does not apply to CommercialBP Awards under Rule 11(c).[17]

> c.   **It Is Immaterial Whether the District Court Conducted a Choice-of-Law Analysis in Determining the Governing Law for Interpreting the Forum Selection Clause**

Mr. Dimech's next argument is virtually no argument at all.  Mr. Dimech asserts that "a district court is 'bound' to engage in a choice-of-law analysis … to determine what substantive law should guide this court's interpretation of the FSC" and that "[t]he District Court's improper reliance solely on federal common law to guide its interpretation of the forum selection clause from the Rules undermines its

---

[17]   While unnecessary to reject Mr. Dimech's argument, STUSCO does not concede at this time that Rule 11(c) establishes that the ConditionalBP Rules and forum selection clause therein are inapplicable to the other two components of the CommercialBP Award—the cash payments of $100,000 and 60% of the remaining amount of the CommercialBP Award.  There is no indication that the phrase "*[t]he rights and obligations* arising from the employment relationship between the Employee and any member of the Group" in Rule 11(c) refers to and encompasses the two cash payment components of CommercialBP Awards.  The evidence below established that Mr. Dimech did not have any "*right*" to a CommercialBP Award in any specific amount—much less $37,570,000 ($8,170,000+$29,400,000)— calculated in any specific way.  Instead, the record establishes otherwise. ROA.126 (testimony that: (1) the Bonus Oversight Committee "make[s] all decisions regarding the amount of the bonus and the portion of the bonus awarded under the Commercial Bonus Plan to be paid in cash and the portion deferred and placed in the Conditional Bonus Plan"; and (2) "[t]he bonuses are entirely discretionary and at the sole discretion of the Bonus Oversight Committee.").

validity." Open.Br.25. According to Mr. Dimech, the district court erred in citing *Wellogix, Inc. v. SAP America, Inc.*, 58 F. Supp. 3d 766 (S.D. Tex. 2014) as requiring the court to "look[] to the language of the contract" when determining the FSC's scope. *Id.* at 24-25. That's the extent of his argument on this point.

As an initial matter, Mr. Dimech's argument—like the other arguments in his opening brief in this appeal—should be summarily rejected because he: (1) waived the argument in the trial court by failing to assert it until after the magistrate judge had already issued its M&R granting STUSCO's motion;[18] and (2) waived the argument in this appeal by failing to adequately brief the issue.[19]

Mr. Dimech's argument should also be denied on the merits because he fails to cite an iota of reasoning, much less authority, to support his apparent assumption that the district court would have held that the forum selection clause does not apply to his claims if it had applied some other unspecified law. *First*, Mr. Dimech fails to explain why the forum selection clause at issue needs to be interpreted when: (1) he concedes that the clause applies to disputes arising out of or in connection with a

---

[18]    *See, e.g.*, ROA.96-108, 168-71; *Benamou*, 711 F. App'x at 242; *Fleny*, 243 F.3d at 219 n.3.

[19]    *See, e.g.*, *United States v. Ballard*, 779 F.2d 287, 295 (5th Cir. 1986) (holding that grounds for new trial were abandoned on appeal due to insufficient briefing / "Notice pleading does not suffice for appellate briefs."); *see also Thibodeaux*, 211 F.3d at 912.

ConditionalBP Award;[20] and (2) his claims explicitly and necessarily arise under and in connection with his ConditionalBP Award (*supra* at 5-9, 22-23).

*Second*, even assuming interpretation of the forum selection clause is necessary, Mr. Dimech's argument fails to perform the choice-of-law analysis he claims was not—but should have been—performed to establish which jurisdiction's law governed any interpretation of the clause. Mr. Dimech just assumes it's Texas law, even though the ConditionalBP Rules contains a choice of law provision expressly requiring the application of English law. ROA.75 (Rule 14: "English law governs these Rules and all Awards and their construction.").

*Third*, Mr. Dimech fails to establish that the interpretation of the forum selection clause would have been different depending on whether Texas law or English law governs the clause's interpretation. Indeed, Mr. Dimech admits earlier in his opening brief that Texas law, like federal common law, requires a court to look to the language of the contract to interpret the forum selection's clause. Open.Br.19-20 & n.49, 22 & n.52, 24 (citing *MCI Telecommuns. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999)). The district court therefore would not have erred in interpreting the forum selection clause whether it applied federal common law or Texas law. Or English law for that matter. *See Wood v. Capita Ins. Servs. Ltd.*,

---

[20]    Open.Br.21-22 ("In other words, the agreement limits the scope of its own application to only apply to the Awards made under the Conditional Bonus Plan.").

[2017] UKSC 24 (English Law: ¶ 10: "[T]he court must consider the contract as a whole."); *Fintech Fund, F.L.P.*, 836 F. App'x at 224 ("Under English law, courts should make every attempt to harmonize contractual provisions and should determine that two provisions are irreconcilable only as a 'last resort.'" (citing *Fiona Trust & Holding Corp. v. Privalov*, [2007] EWCA (Civ) 20)).

Consequently, Mr. Dimech does not and cannot show that the district court's alleged failure to conduct a choice-of-law analysis to determine which law governs the interpretation of the forum selection clause would have supported a holding that the clause does not apply to Mr. Dimech's claims. As shown above, the clause applies to the claims regardless of which potential jurisdiction's law governs.

### d. Any Alleged Errors in the District Court's Opinion Do Not Support Reversal of the Final Judgment

Finally, Mr. Dimech argues that "the District Court's analysis contains clear factual errors about the distinctions between the Commercial Bonus Program and the Conditional Bonus Plan" and that "[s]uch errors indicate the District Court's order is based on an inaccurate reading of the record making its analysis unreliable." Open.Br.25-26. As shown below, none of those alleged errors are actual errors, much less material errors that require reversal of the district court's judgment.

Mr. Dimech points to two alleged errors in the district court's opinion. He first states that "[a]fter noting that the 'CBP' will refer to the 'Commercial Bonus Program,' in the very next sentence of the M&R, it states that Defendant's Motion

35

is 'based on a forum selection clause in the CBP Agreement.'" *Id.* at 26.  Mr. Dimech asserts that this "demonstrates a mistaken interchanging of the *Commercial* Bonus Program for the <u>Conditional</u> Bonus Plan from the outset." *Id.*  The district court's opinion makes clear that there was no confusion on that point.  The district court's M&R: (1) expressly states that the forum selection clause is found in "[t]he Rules of the Shell Trading Conditional Bonus Plan," not some CommercialBP document (ROA.133); (2) expressly notes that Mr. Dimech is arguing that the forum selection clause does not govern his claims because his claims purport to relate exclusively to his CommercialBP Award and not his ConditionalBP Award (*id.*); and (3) expressly rejects that erroneous distinction because the record establishes that he is challenging the sufficiency of all components of the CommercialBP Award, including the ConditionalBP Award (*id.*).

Mr. Dimech next misleadingly states that "the District Court's acceptance of the forum selection clause's application is supported by the forum selection clause's use of the term 'any Award,' thus, per the District Court's reasoning, the Commercial Bonus Program Award was encompassed" but that "the term 'Award' was defined in the Rules as 'any award made under [the ConditionalBP] Rules.'" Open.Br.26-27.  But reading the rest of that paragraph in the district court's memorandum shows that the district court correctly concluded that the term "Award" in the forum selection clause could encompass the CommercialBP Award

36

in this case because the CommercialBP Award and the ConditionalBP Award "are inextricably intertwined" where the "Conditional[BP] Bonus is a percentage of the total [CommercialBP] bonus." ROA.133. Accordingly, "[a]ny challenge to the [CommercialBP Award] is necessarily also a challenge to, and therefore 'in connection with,' the [ConditionalBP Award]." *Id*.

In short, the district court's memorandum clearly demonstrates that it understood the issues and correctly applied the law to the facts to reach the right decision—Mr. Dimech's claims must be dismissed for forum non conveniens.

**E.    The Public Interest Factors Strongly Support Dismissal for Forum Non Conveniens**

As noted above, in determining whether to grant a motion to dismiss for forum non conveniens, a district court need not address whether private interest factors support the district court's retention of a case when a valid and enforceable mandatory forum selection clause exists, because the parties have contractually consented to have the dispute litigated in the forum in that clause. *See, e.g.*, *Atl. Marine Const. Co.*, 571 U.S. at 64; *Weber*, 811 F.3d at 775-76. When such a clause exists, "the plaintiff's choice of forum merits no weight" and the district court should consider the following public interest factors only: "(1) administrative difficulties flowing from court congestion; (2) local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary

37

problems in conflict of laws; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty." *Atl. Marine Const. Co.*, 571 U.S. at 64; *Al Copeland Invs., L.L.C. v. First Specialty Ins. Co.*, 884 F.3d 540, 545 (5th Cir. 2018).

The burden is on *the plaintiff* to prove the public interest factors defeat dismissal for forum non conveniens. *See, e.g.*, *Atl. Marine Const. Co.*, 571 U.S. at 67; *Weber*, 811 F.3d at 758. And the public interest factors justify refusal to enforce a forum selection clause only in "truly exceptional cases." *Al Copeland Invs., L.L.C.*, 884 F.3d at 545 (quoting *Barnett*, 831 F.3d at 309).

In his response to STUSCO's motion to dismiss, Mr. Dimech did not argue that the first, third, and fourth public interest factors warrant retention of the case and, thus, waived any argument as to those factors. ROA.103-04; *Shambaugh & Son, L.P.*, 91 F.4th at 369; *Benamou*, 711 F. App'x at 242; *Fleny*, 243 F.3d at 219 n.3. And in his opening brief on appeal, Mr. Dimech does not argue that *any* of the public interest factors warrant retention of the case and, thus, has waived that argument twice over. *See, e.g.*, *Muhammad*, 14 F.4th at 363 n.3; *Thibodeaux*, 211 F.3d at 912. However, out of an abundance of caution, STUSCO will show that the district court did not abuse its discretion in weighing the public interest factors and finding that Mr. Dimech failed to prove that this is one of the "truly exceptional cases" in which those factors defeat dismissal. ROA.134-35.

As to the first factor, Mr. Dimech does not and cannot cite any evidence

38

establishing that the district court should retain the case because the English courts are more congested than the district courts in the Southern District of Texas. *See, e.g.*, *Fintech Fund, F.L.P.*, 836 F. App'x at 227 (rejecting argument that court congestion factor weighed against dismissal because "[t]here is no evidence that the English courts are any less congested than those in the Southern District of Texas" and plaintiff bore burden to prove that English courts are just as congested as federal courts in Southern District of Texas); *Al Copeland Invs., L.L.C.*, 884 F.3d at 545 (rejecting plaintiff's argument that first factor weighed against dismissal based on plaintiff's failure to present evidence regarding court congestion statistics in New York state courts that possessed exclusive jurisdiction of plaintiff's claims under forum selection clause); *Heaven Media Ltd.*, 2022 WL 18585892 at *4 (holding that first factor did not weigh against dismissal where "nothing has been shown that there are any administrative difficulties with court congestion in the United Kingdom").

As to the second factor, Mr. Dimech failed to show that there is any "local interest in having localized controversies decided at home." In the district court, Mr. Dimech argued that: (1) "the claims in this matter involve the treatment of a U.S. person with permanent residency in the United States by an American employer with headquarters in Houston"; (2) "Plaintiff's team members who were also negatively impacted by the misrepresentations made to Dimech were almost all based in the United States"; and (3) Defendant's acts that give rise to the claims in this matter

39

took place in Houston." ROA.103-04.  The district court did not abuse its discretion in finding that this factor does not weigh against dismissal where: (1) Mr. Dimech is an Australian citizen who resides in Australia (ROA.6, 13-14, 16, 106);[21] and (2) there is no dispute that key members of the Bonus Oversight Committee that manages the CommercialBP and ConditionalBP and awarded Mr. Dimech's bonus reside and work in London, England (ROA.126-27).  It also is immaterial that certain of Mr. Dimech's "team members"—whom he claims were allegedly negatively impacted by STUSCO's purported misrepresentations (a conclusory, vague, and unproven assertion)—were "*almost* all" located in the United States since they are not plaintiffs in this case.  And to the extent Mr. Dimech intends to call them as witnesses, their location in Texas is immaterial in determining whether the *public* interest would be served by litigating this case in Texas.  *See Atl. Marine Constr. Co.*, 571 U.S. at 584 ("[W]hen [the plaintiff who filed suit in Texas federal district court] entered into a contract to litigate all disputes in Virginia, it knew that distant forum might hinder its ability to call certain witnesses and might impose other burdens on its litigation efforts.  It nevertheless promised to resolve its disputes in

---

[21]    *See, e.g.*, *Hebert v. Marathon Oil Co.*, No. 3:19-CV-109, 2020 WL 1429480, at *1 (S.D. Tex. Mar. 19, 2020) (upholding forum selection clause requiring dispute to be resolved in Houston despite plaintiff being Louisiana resident and filing suit in Galveston); *Goodly v. Check 6, Inc.*, No. CV-16-1936, 2016 WL 3090293, at *4 (E.D. La. June 2, 2016) (upholding forum selection requiring dispute to be resolved in Oklahoma despite plaintiff being based in Louisiana).

Virginia, and the District Court should not have given any weight to [the plaintiff's] current claims of inconvenience."); *Heaven Media Ltd.*, 2022 WL 18585892, at *4 (holding that second factor did not weigh against dismissal where case involved contract dispute between Texas resident and United Kingdom company and agreements at issue specified that laws of United Kingdom govern any dispute).

As to the third factor, there is no dispute that the forum selection clause contains a choice of law provision requiring Mr. Dimech's claims to be resolved by an English court applying English law.  Mr. Dimech fails to explain how a federal district court in Texas would be more "at home" than an English court in resolving claims that would be governed by English law.  *See, e.g.*, *RKR Techs., Ltd. v. Recaro Aircraft Seating Am.*, 815 F. Supp. 3d 500, 508 (N.D. Tex. 2025) (holding that third factor "weighs heavily in favor of dismissal" / "[A]lthough Texas courts are capable of applying foreign law, the more sensible course is to allow a German court, fully fluent in the governing principles, to resolve a dispute centered on German contract law."); *Heaven Media Ltd.*, 2022 WL 18585892, at *4 (holding that third factor did not weigh against dismissal / "A United Kingdom court will be best acquainted with the nation's own laws.").

As to the fourth factor, Dimech agreed to a choice of law provision requiring the application of English law, and an English court would be applying its own local law.  ROA.75; *Heaven Media Ltd.*, 2022 WL 18585892, at *4 (holding that fourth

41

factor did not weigh against dismissal because "[a] court in the United Kingdom would apply its local law"); *Matthews v. Tidewater Crewing, Ltd.*, 658 F. Supp. 3d 332, 350 (E.D. La. 2023), *aff'd*, 108 F.4th 361, 367 (5th Cir. 2024) (holding that fourth factor did not weigh against dismissal because "dismissing this action in favor of English courts avoids issues of a forum applying foreign [English] law.").

Finally, as to the fifth factor, it is not less burdensome to ask a Texas (rather than an English) jury to apply English law to resolve a lawsuit (1) brought by an Australian citizen and resident (2) who has not worked at STUSCO—the sole contact this case has with Texas—since 2021 and (3) is complaining of a bonus decision made in key part by persons residing and working in London, England.

In short, ***none*** of the public interest factors weigh against dismissing Mr. Dimech's claims for forum non conveniens.  But even if some of the factors might in some way, the district court certainly did not abuse its discretion in concluding that this ***is not*** one of the "truly exceptional cases" where those factors defeat dismissal.  *See, e.g.*, *Al Copeland Invs., L.L.C.*, 884 F.3d at 545-46 (district court did not abuse discretion in finding that "exceptional" case did not exist for retaining case based on public interest factors); *Barnett*, 831 F.3d at 309 (same).

## CONCLUSION

For the reasons above, STUSCO respectfully requests that this Court: (1) affirm the district court's August 28, 2025 final judgment in full; and (2) grant

STUSCO any and all other relief to which it is entitled.

Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP


By    /s/ *Warren S. Huang*
         Shauna Johnson Clark
         Texas Bar No. 00790977
         shauna.clark@nortonrosefulbright.com
         Warren S. Huang
         Texas Bar No. 00796788
         warren.huang@nortonrosefubright.com
         Heather Sherrod
         Texas Bar No. 24083836
         heather.sherrod@nortonrosefulbright.com
1500 Lamar, Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

*Counsel for Appellee Shell Trading U.S. Company*

43

# CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25, undersigned counsel certifies that an electronic copy of Appellee Shell Trading U.S. Company's Response Brief on the Merits was served by the Court's electronic-filing system on counsel for Appellant in compliance with Federal Rule of Appellate Procedure 25 and Fifth Circuit Rule 25.2.5 on July 17, 2026.  Undersigned counsel further certifies that an electronic (PDF) copy of said brief was electronically filed with the Clerk of the Fifth Circuit in compliance with Fifth Circuit Rule 25.2 on July 17, 2026.

*/s/ Warren S. Huang*
Warren S. Huang

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.      This principal brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2, this principal brief contains 11,500 words.

2.      This principal brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac (2026) in Times New Roman 14-point font.

/s/ Warren S. Huang
Warren S. Huang
*Attorney for Appellee*

Date: July 17, 2026
